[No. D056440. Fourth Dist., Div. One. May 8, 2012.]

ANNIE SCIBORSKI, Plaintiff and Appellant, v.
PACIFIC BELL DIRECTORY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion part II.

1154

## COUNSEL

Law Offices of Joshua D. Gruenberg, Joshua D. Gruenberg; Tyson & Tyson, Zachary T. Tyson; Boudreau Williams and Jon R. Williams for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, Michael C. Sullivan, Aaron A. Buckley, Karin K. Sherr and Timothy M. Keegan for Defendant and Appellant.

## OPINION

**HALLER, J.**—Annie Sciborski sued her former employer, Pacific Bell Directory (Pacific Bell), challenging Pacific Bell's actions in deducting approximately $19,000 from her wages to recover a $36,000 sales commission paid to her. After a three-day trial, a jury found Pacific Bell's wage deductions violated Labor Code section 221 and resulted in Sciborski's constructive discharge in violation of public policy. The jury awarded Sciborski $36,000 in lost earnings, but found Sciborski did not prove her claimed future economic loss and emotional distress damages. The court awarded Sciborski attorney fees based on her prevailing on the Labor Code section 221 claim.

Pacific Bell appeals, contending Sciborski's claims were preempted by federal law under section 301 of the Labor-Management Relations Act, 1947 (section 301). (29 U.S.C. § 185.) Pacific Bell maintains Sciborski's claims are preempted because she was a union member governed by a collective bargaining agreement and a consideration of her claims required the court to interpret this agreement. We reject this contention. Sciborski's claims are not preempted because they arose from independent state law and did not require the interpretation of the collective bargaining agreement.

In Pacific Bell's appeal and Sciborski's cross-appeal, each party challenges the attorney fees award. Pacific Bell contends Sciborski was not entitled to

the fees and the amount awarded was unreasonable. Sciborski contends the court erred in refusing to apply a multiplier to increase the award. In the unpublished portion of the opinion, we reject these challenges. Sciborski was entitled to recover attorney fees on her statutory claim and the court did not abuse its discretion in finding the amount was reasonable on the record before it.

## FACTUAL AND PROCEDURAL SUMMARY

Because this appeal involves primarily the legal preemption question, we focus our factual summary on the facts necessary to decide this issue. We view the facts in the light most favorable to Sciborski, the party prevailing at trial. Additional facts will be set forth when discussing the legal issues.

### *Background*

In October 2005, Sciborski began working as a sales representative at Pacific Bell, selling advertising for Pacific Bell's Yellow Pages. She was a member of the International Brotherhood of Electrical Workers, AFL-CIO Local Union 2139 (Union), and the terms and conditions of her employment were governed by the collective bargaining agreement (CBA) between Pacific Bell and the Union.

Pursuant to the CBA, Sciborski was paid a basic weekly salary and a commission on completed sales. The CBA sets forth detailed rules governing commissions, including that "commissions are earned by employees only when the final commission rate and contract price applicable to a sale are determined by the Company, and all of the conditions to earn commissions have been satisfied." The CBA further provides that "[u]ntil the commissions are earned, any commission payments made to employees . . . are advances to be applied against employees' future earned commissions."[1] (Italics added.)

---

[1] This provision, entitled "Commission Adjustments," states in full: "Given the importance of proper and timely payment of commissions to employees, and to avoid any misunderstanding of third parties, the parties agree to clarify herein their longstanding intent and practice concerning the payment of commissions. Because commission rates and the contract price applicable to a sale may change after the employee was advanced a commission and before all conditions have been satisfied to earn a commission, commissions are earned by employees only when the final commission rate and contract price applicable to a sale are determined by the Company, and all of the conditions to earn commissions have been satisfied. Until the commissions are earned, any commission payments made to employees under this Agreement are advances to be applied against employees' future earned commissions. If employees are advanced commissions, which are not later earned by the employees, the Company will adjust the commission advances by deducting the unearned portion of the commission advances from the employees' future commission payments. All references to commissions in this Agreement are to commission advances until the commissions become earned."

In 2006 and 2007, Sciborski was assigned to customers in the "North County Coastal" and "North County Inland" geographic areas. However, when another employee went on a leave of absence, Sciborski (and several other employees) volunteered to also work for customers in the "San Diego Metro" (Metro) area. In April 2007, Pacific Bell assigned Sciborski to a Metro area business customer, Expert Home Services, which was known as a "new connect" because it was a new telephone customer. New customer assignments are valuable because they are more likely to generate new business. Pacific Bell assigned the account to Sciborski in her "primary" module.

Sciborski initially sold an average size advertisement to Expert Home Services, and received a commission check of about $800. That commission has never been challenged. Several months later, in the summer of 2007, Sciborski sold a much larger advertising campaign to Expert Home Services for approximately $24,000 per month. The contract was signed and the sale closed in September 2007. In November 2007, the Expert Home Services advertisement was published and Pacific Bell received full compensation from Expert Home Services for the advertisement.

Sciborski and her supervisor (Pacific Bell's sales manager) reviewed the sale and the supervisor confirmed that Sciborski had been the sole salesperson on the account and there was nothing in the records showing she would not be entitled to the full commission ($36,000). Sciborski thus entered the sale in the computer system, and requested the commission be paid. However, several days later, Sciborski's supervisor told Sciborski that Christine McCormick (a Union official) had raised questions about her entitlement to the sales commission. McCormick said she intended to "look" into the sale because there was " 'no way' " Sciborski " 'could have sold that.' "

Shortly after, Pacific Bell paid Sciborski $36,000 for the commission (after taxes she received about $17,000).

The Union thereafter formally protested the commission, arguing the account was improperly assigned to Sciborski because she was a "loaned" representative to the account. Pacific Bell thereafter notified Sciborski that there had been a clerical or computer error and she should not have been assigned the Expert Home Services account. Pacific Bell also notified her that management and Union representatives had made a decision "they were going to take the account and commission away from [her] and spread . . . the commission[] across the floor [(divide the $36,000 among all of the Metro area salespersons)]."

Shortly after, Pacific Bell began making deductions from Sciborski's wages to recover the amount of the commission. Over Sciborski's protests, Pacific

Bell eventually charged back $19,573.78 from Sciborski's paychecks and also deducted additional funds from her 401(k) account. Although Sciborski contacted her Union representatives, they declined to take any action on her behalf, particularly because the Union had initiated the challenge to the sales commission.

On April 2, 2008, Sciborski resigned from her employment to prevent Pacific Bell from making additional deductions from her paychecks.

### Complaint and Pretrial Proceedings

Soon after resigning, Sciborski filed a complaint against Pacific Bell challenging Pacific Bell's deductions from her wages, alleging the deductions (1) violated applicable wage statutes, including Labor Code section 221; (2) constituted a breach of contract; and (3) resulted in her constructive discharge in violation of public policy. Labor Code section 221 generally prohibits an employer from deducting earned amounts from an employee's wages.

Within two months, Pacific Bell removed the action to the federal district court under section 301's complete preemption doctrine. (See 28 U.S.C. § 1447.) Pacific Bell maintained that Sciborski's claims arose from the breach of a collective bargaining agreement, requiring the application of federal law under section 301, which preempts state law.

Sciborski then moved to remand the case back to the state court, arguing there was no federal removal jurisdiction over the case. Sciborski contended her claims were based on independent rights conferred by California statutes and were not substantially dependent on an interpretation of the CBA.

Pacific Bell opposed the motion arguing that under California law an employer is entitled to deduct wages for commission advances that were not yet "earned," and to determine whether Sciborski had "earned" the $36,000, it was necessary to interpret provisions of the CBA. Before the federal court ruled on the motion, Sciborski dismissed her breach of contract claim. In her reply brief, Sciborski argued that with respect to her two remaining claims there was no federal preemption because her recovery was not dependent on the resolution of disputed language in the CBA.

In an eight-page written order, the district court granted Sciborski's motion and ordered the case remanded to the state court. After setting forth the applicable law, the court ruled that neither the Labor Code section 221 claim nor the constructive discharge claim was preempted by section 301.

On the Labor Code section 221 claim, the district court stated: "Under California law, '[a]n employer may legally advance commissions to its

employees prior to the completion of all conditions for payment and, by agreement, charge back any excess advance over commissions earned against any future advance should the conditions not be satisfied.' [Citation.] 'The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise ascertainable.' [Citation.] In the case, Defendant's liability under [section] 221 requires a court to determine whether Defendant made deductions from Plaintiff's commissions after 'all of the conditions to earn commission had been satisfied.' This is a factual inquiry and does not require interpretation of the CBA."

On the constructive discharge in violation of public policy claim, the district court found there was no preemption because the claim did not require the court to interpret the CBA and the claim arose "under the public policy of California rather than rights conferred by the CBA."

Four months after the remand, Pacific Bell moved for summary judgment essentially on the same preemption grounds. The court (Judge Charles Hayes) denied the motion, finding there was no federal preemption, reasoning, in part, that Sciborski's statutory claims would not require the court to "interpret or analyze . . . the [CBA]" and "rather [the court] is required to make a factual determination as to whether the disputed commissions were in fact earned."[2]

Pacific Bell later brought a cross-complaint against Sciborski for breach of contract, seeking the remaining portion of the $36,000 sales commission paid to her.

### Summary of Trial Proceedings

At trial, Sciborski testified and presented evidence showing she satisfied all the applicable conditions necessary to earning a sales commission on the Expert Home Services sale and thus argued that Labor Code section 221 prohibited Pacific Bell from deducting the commission from her wages. These applicable conditions included "retir[ing] the sale" (i.e., negotiating and executing the contracts, obtaining artwork approval, and entering all information into the system), the advertisement was printed in the Yellow Pages book, and payment was received from Expert Home Services.

---

[2] Although the district court had already reached the merits of the preemption issue, this ruling did not bar relitigation of the issue in the state court. Upon remand, a district court's order on a removal issue is generally not accorded collateral estoppel effect. (See *Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520, 532 [18 Cal.Rptr.3d 700]; *Moreau v. San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 619–621 [258 Cal.Rptr. 647].)

In defense, Pacific Bell did not dispute that Sciborski had performed these tasks and that Sciborski had fully satisfied these conditions to earning a commission on the Expert Home Services sale. Pacific Bell also agreed that if Sciborski had been properly assigned to the account, she would have been entitled to the full $36,000 commission. However, Pacific Bell argued that Sciborski never "earned" the commission because there was a clerical computer error and the account should not have been assigned to her in the first place. Pacific Bell acknowledged that it was responsible for the improper assignment.

Pacific Bell witnesses explained that the Expert Home Services account was not properly assigned to Sciborski because she was a "loaned" salesperson for the Metro area accounts, and "loaner reps" are not permitted to work on a "new-connect" customer assignment. Pacific Bell also relied on a document entitled "Market Selection Practice" (Market Selection document) which was incorporated into the CBA and contains detailed rules for employee account assignments. Provisions in the Market Selection document state: "Sales Representatives that are newly assigned, or loaned to a campaign are not eligible for new connects unless they were initially assigned to the campaign and have a full market assignment" and an employee "will be removed from New Connect distribution process when . . . [¶] . . . [¶] . . . loaned to campaigns." Pacific Bell also relied on a provision in the CBA pertaining to account distributions that stated: "Any accounts which have not been previously assigned or handled shall be assigned to Primary Module."

However, Pacific Bell witnesses acknowledged at trial that neither the CBA nor the Market Selection document contained any provision stating that an assignment resulting from the company's clerical error was a proper basis to divest an employee of a sales commission that was otherwise earned under the CBA. They relied instead on the "Commission Adjustments" provision of the CBA, which generally provided that "commissions are earned by employees only when the final commission rate and contract price applicable to a sale are determined by the Company, and all of the conditions to earn commissions have been satisfied. Until the commissions are earned, any commission payments made to employees under this Agreement are advances to be applied against employees' future earned commissions." (See fn. 1, *ante.*)

Pacific Bell also relied on its "past practices" to argue the commission was an advance. However, at trial there was only one brief reference to a prior incident in which a commission was recouped because of an improper customer assignment, but the facts in that incident were dissimilar because the account had been specifically assigned to another employee. Pacific Bell

acknowledged there was no other Pacific Bell employee who should have been specifically assigned the Expert Home Services account.[3]

In response to Pacific Bell's defense, Sciborski did not present evidence disputing Pacific Bell's interpretation of the Market Selection document's provisions pertaining to the proper assignment of the Expert Home Services account. Instead, she testified that she did not know, and there was no basis upon which she should have known, of the clerical error in the assignment, and that her supervisors were aware of and approved the assignment and confirmed the propriety of the assignment after the sale. She emphasized that it was not until the Union officials disputed the commission that Pacific Bell decided the commission was not earned because the Expert Home Services account had been improperly assigned. Sciborski further presented evidence that several Pacific Bell management employees and Union officials acknowledged during their depositions that Pacific Bell's current position that she was not entitled to the Expert Home Services sales commission was not based on any provision in the CBA or on any document incorporated into the CBA.

### Jury Deliberations and Verdict

During deliberations, the jury sent several notes to the trial judge. One note stated: "Does satisfying the conditions as expressed in Question 1 [of the special verdict] mean all the conditions as stated in the CBA or only those conditions over which Ms. Sciborski had control?" Question 1 of the special verdict asked whether Sciborski had satisfied "all of the conditions necessary to earn a commission . . . ." The court responded by informing the jury it already had the information to decide this issue. Another note stated: "Is the CBA legally binding?" The court responded that the CBA "is an agreement between the Union and the Company."

After several days of deliberations, the jury found Sciborski proved both of her causes of action. On the Labor Code section 221 claim, the jury found Sciborski satisfied "all of the conditions necessary to earn a commission on the Expert Home Services account" and Pacific Bell owes Sciborski wages for this commission. On the constructive discharge claim, the jury found Sciborski resigned from her employment because Pacific Bell deducted her "earned wages" and these deductions "ma[d]e [the] conditions so intolerable that a reasonable person in Annie Sciborski's position would have no reasonable alternative except to resign." As to the damages attributable to

---

[3] The court sustained some of Sciborski's objections to other "past practices" evidence. On appeal, Pacific Bell does not challenge these evidentiary rulings, other than referencing the issue in a footnote. Thus, any challenge to the court's evidentiary rulings is waived. Moreover, Pacific Bell does not cite to any offer of proof showing what this "past practices" evidence would have shown.

these claims, the jury found Sciborski's damages for past economic loss were $36,000, but declined to award Sciborski damages for her claimed future economic loss or noneconomic loss. The jury also found that Pacific Bell did not prove its breach of contract claim against Sciborski.

## DISCUSSION

### I. *Preemption Claim*

Pacific Bell contends the court erred in refusing to find Sciborski's claims were preempted by federal law.

### A. *Standard of Review*

" 'The party claiming federal preemption bears the burden of establishing it. [Citation.]' [Citation.] 'When the issues regarding federal preemption involve undisputed facts, it is a question of law whether a federal statute or regulation preempts a state law claim and, on appeal, we independently review a trial court's determination on that issue of preemption. [Citations.]' [Citation.] And insofar as the court resolved disputed issues of fact, its findings are reviewed under the substantial evidence standard, i.e., they will be sustained unless shown to lack substantial evidentiary support. [Citations.]" (*Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 311 [122 Cal.Rptr.3d 726].)

### B. *Legal Principles Governing Section 301 Preemption*

Under section 301, federal law preempts state law pertaining to the interpretation of collective bargaining agreements. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 762 [134 Cal.Rptr.2d 138].) "[A]lthough state courts have concurrent jurisdiction . . . , the substantive law governing union-management labor relations is exclusively federal, and the interpretation of collective bargaining agreements is exclusively a matter for arbitration under federal law." (*Ibid.*) By enacting section 301, Congress sought to ensure nationwide uniformity with respect to the interpretation of collective bargaining agreements and preserve arbitration as the primary means of resolving disputes over the meaning of collective bargaining agreements. (*Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 404 [100 L.Ed.2d 410, 108 S.Ct. 1877] (*Lingle*); *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 211, 219 [85 L.Ed.2d 206, 105 S.Ct. 1904] (*Allis-Chalmers*).)

However, recognizing that Congress intended to preserve state authority to regulate labor standards, the United States Supreme Court has made clear that

"not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ." (*Allis-Chalmers, supra,* 471 U.S. at p. 211; see *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 396, fn. 10 [96 L.Ed.2d 318, 107 S.Ct. 2425] (*Caterpillar*); see *Humble v. Boeing Co.* (9th Cir. 2002) 305 F.3d 1004, 1007; *Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1108 (*Balcorta*).) Section 301 preemption applies only to "state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" (*Livadas v. Bradshaw* (1994) 512 U.S. 107, 123 [129 L.Ed.2d 93, 114 S.Ct. 2068] (*Livadas*).) When liability is governed by independent state law, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished . . . ." (*Id.* at p. 124.)

■ Under section 301 preemption analysis, it is helpful to apply a two-part test to determine whether a claim is preempted. First, the court should evaluate whether the claim arises from independent state law or from the collective bargaining agreement. If the claim arises from the collective bargaining agreement, the claim is preempted as a matter of law. (See *Allis-Chalmers, supra,* 471 U.S. at p. 213.) However, if the claim arises from independent state law, the court must then proceed to the second step. In this step, the court determines whether the claim requires "interpretation or construction of a labor agreement," or whether a collective bargaining agreement will merely be "reference[d]" in the litigation. (*Balcorta, supra,* 208 F.3d at pp. 1108–1109; see *Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 690–692 (*Cramer*).) A state law claim is preempted if a court must *interpret* a disputed provision of the collective bargaining agreement to determine whether the plaintiff's state law claim has merit. (*Lingle, supra,* 486 U.S. at p. 413; *Allis-Chalmers, supra,* 471 U.S. at p. 220; *Cramer, supra,* 255 F.3d at p. 691; *Department of Fair Employment & Housing v. Verizon California, Inc.* (2003) 108 Cal.App.4th 160, 165 [133 Cal.Rptr.2d 258].)

The term "interpret" in this context "is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" (*Balcorta, supra,* 208 F.3d at p. 1108.) Although the plaintiff cannot avoid preemption by "'artfully pleading'" the claim (*Hyles v. Mensing* (9th Cir. 1988) 849 F.2d 1213, 1215), the claim must "*require interpretation*" of the collective bargaining agreement. (*Cramer, supra,* 255 F.3d at pp. 691–692, italics added.) Preemption does not arise when interpretation is required only by a defense. (*Caterpillar, supra,* 482 U.S. at pp. 398–399; *Cramer, supra,* 255 F.3d at p. 690.) Preemption occurs when a claim cannot be resolved on the merits without

choosing among competing interpretations of a collective bargaining agreement and its application to the claim. The determination of whether a claim is preempted depends on the particular facts of each case. (*Cramer, supra,* 255 F.3d at p. 691.)

Although it is easy to state the rules applicable to section 301 preemption, applying these rules is not always a simple task. "The demarcation between preempted claims and those that survive [section] 301's reach is not . . . a line that lends itself to analytical precision. As the [United States] Supreme Court acknowledged . . . , '[t]he Courts of Appeals have not been entirely ·uniform in their understanding and application of the principles . . . .' [Citation.] And little wonder. 'Substantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a brightline test. [Citations.]" (*Cramer, supra,* 255 F.3d at p. 691; see *Lujan v. Southern Cal. Gas Co.* (2002) 96 Cal.App.4th 1200, 1207 [117 Cal.Rptr.2d 828]; see also *Galvez v. Kuhn* (9th Cir. 1991) 933 F.2d 773, 776 ["section 301 has been the precipitate of a series of often contradictory decisions, so much so that 'federal preemption of state labor law has been one of the most confused areas of federal court litigation' "].)

█ Further, in considering the preemption issue, we are mindful that the federal district court found no federal law preemption in this case. The law of the case doctrine does not strictly apply to this determination, but we are guided by the district court's reasoning and conclusion to the extent it is persuasive.[4] Although not binding, a federal court's interpretation and application of federal preemption law, particularly in the same case, is entitled to substantial deference. (See *Levy v. Skywalker Sound, supra,* 108 Cal.App.4th at p. 762, fn. 8; *Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 97–98 [3 Cal.Rptr.3d 365] [noting persuasive nature of federal appellate court decisions construing federal law]; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 506, pp. 569–570.)

With these principles in mind, we turn to determine whether either of Sciborski's claims—the statutory wage claim or the constructive termination claim—was preempted.

### C. *Sciborski's Statutory Wage Claim*

The jury found Pacific Bell's wage deductions violated Labor Code section 221. On appeal, Pacific Bell does not challenge that the Labor Code section

---

[4] The law of the case doctrine generally applies only to decisions of an appellate court; thus, the doctrine does not apply to a ruling of a district court in the same case. (See *Providence v. Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249, 256 [209 Cal.Rptr. 276].)

221 claim arose from independent state law, but argues the law is preempted because the jury was required to interpret provisions of the CBA to determine whether Sciborski proved her claim that Pacific Bell violated the code section.

### 1. *Scope of Labor Code Section 221 Prohibition*

Labor Code section 221 states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." " 'Wages' " are defined to include "all amounts for labor performed by employees . . . whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis*, or other method of calculation." (Lab. Code, § 200, italics added.) Under this definition, sales commissions are considered "wages." (See *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203, 207–208 [10 Cal.Rptr. 819, 359 P.2d 251]; *Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1329 [48 Cal.Rptr.3d 749] (*Koehl*); *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1118 [41 Cal.Rptr.2d 46] (*Hudgins*).)

■ Labor Code section 221 prohibits an employer from deducting amounts from an employee's wages, even as a setoff for amounts clearly owed by the employee. (See *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 6 [177 Cal.Rptr. 803].) This prohibition reflects "California's strong public policy favoring the protection of employees' wages," including amounts earned through commissions on sales. (*Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28, 40–41 [41 Cal.Rptr.3d 108].) Labor Code section 221's rights are nonnegotiable and cannot be waived by the parties. (See Lab. Code, § 219.) "By enacting [Labor Code] section 221 . . . the Legislature has prohibited employers from using self-help to take back any part of 'wages theretofore paid' to the employee, except in very narrowly defined circumstances provided by statute." (*Hudgins, supra,* 34 Cal.App.4th at p. 1121.)

One of the circumstances allowing wage deductions is that an employer may recover a commission that was an "advance" but not yet "earned." (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 705 [24 Cal.Rptr.3d 351] (*Steinhebel*); see *Koehl, supra,* 142 Cal.App.4th at pp. 1329–1337.) Generally, the right to a commission depends on the terms of the parties' contract. " 'A commission is "earned" when the employee has perfected the right to payment; that is, when all of the *legal* conditions precedent have been met. Such conditions precedent are a matter of contract between the employer and employee, subject to various limitations imposed by common law or statute.' " (*Koehl, supra,* 142 Cal.App.4th at p. 1335.)

Because a commission is not earned until the express contractual conditions are met, Labor Code section 221 does not prohibit an employer from recouping the advance if the conditions are not satisfied. However, once the express contractual conditions are satisfied, the commission is considered a wage and an employer cannot recoup the commission once it has been paid to the employee. (See *Koehl, supra,* 142 Cal.App.4th at pp. 1329–1337; *Steinhebel, supra,* 126 Cal.App.4th at pp. 704–705.)

Because of the strong public policy protecting wages, an employer's right to recoup an advance commission generally requires a showing that the employee agreed in writing to the specific condition and to the employer's right to recoup the advance under the stated conditions. (See *Koehl, supra,* 142 Cal.App.4th at p. 1334 [recoupment of sales commission proper where plaintiffs "did expressly agree to the [chargeback] policy in writing"]; *Steinhebel, supra,* 126 Cal.App.4th at pp. 705–706 [enforcing employment agreement specifying in writing that employees' commissions were contingent on two express conditions]; *Harris v. Investor's Business Daily, Inc., supra,* 138 Cal.App.4th at p. 41 [distinguishing *Steinhebel* on basis that unlike the *Steinhebel* plaintiffs, the employees "did not expressly agree to the chargeback policy in writing"]; see also *Agnew v. Cameron* (1967) 247 Cal.App.2d 619, 622–625 [55 Cal.Rptr. 733]; DLSE Enforcement Policies and Interpretations Manual (Mar. 2006 rev.) (DLSE manual) §§ 34.2 [agency charged with enforcing Cal. labor laws recognizing that the right to recover commission advances at termination is dependent on "a specific written agreement to that effect"], 34.3.1 [agency recognizing that conditions to earning a commission and permitting a later recoupment must be "clear and unambiguous"].)

The principle that such contractual conditions must be clearly expressed is also embodied in Labor Code section 224, which states that "Sections 221, 222 and 223 shall in no way make it unlawful for an employer to withhold or divert any portion of an employee's wages when the employer is required or empowered so to do by state or federal law *or when a deduction is expressly authorized in writing by the employee* to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining . . . ." (Italics added; see *Koehl, supra,* 142 Cal.App.4th at pp. 1337–1338 [employer's chargebacks to commissions were proper under Lab. Code, § 224 because they "were made pursuant to written commission plans *which expressly authorized them*" (italics added)]; *Steinhebel, supra,* 126 Cal.App.4th at p. 707.)

Additionally, an employer's right to define an "earned" commission in the employment contract is not unlimited. Generally, "[t]he essence of an

advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable." (*Steinhebel, supra*, 126 Cal.App.4th at p. 705.) Thus, for example, an employer may expressly condition an earned sales commission on the sale becoming final (e.g., no returns within a specified time or final payment received) or on the employee completing work in providing followup services to the customer. (See *Koehl, supra*, 142 Cal.App.4th at pp. 1329–1337; *Steinhebel, supra*, at pp. 705–706; *Division of Labor Standards Enforcement v. Dick Bullis, Inc.* (1977) 72 Cal.App.3d Supp. 52, 55–56 [140 Cal.Rptr. 267]; see also *Bach v. Curry* (1968) 258 Cal.App.2d 676, 680–681 [66 Cal.Rptr. 220].) But an employer may not require an employee to agree to a wage deduction in the guise of recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the employer's attempt to shift the cost of doing business to an employee. (See *Hudgins, supra*, 34 Cal.App.4th at pp. 1111–1112, 1123 [retailer commission policy unlawful because it deducted wages for " 'unidentified returns,' " which potentially penalized an employee for the misconduct of other employees or customers]; see also *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 230–236 [64 Cal.Rptr.3d 407, 165 P.3d 133].) Where a deduction is "unpredictable, and is taken without regard to whether the losses were due to factors beyond the employee's control," an employer "cannot avoid a finding that its [sales commission policy] is unlawful simply by asserting that the deduction is just a step in its calculation of commission income." (*Hudgins, supra*, at pp. 1123–1124.) An employer is not entitled to "require[] its employees to consent to unlawful deductions from their wages." (*Id.* at p. 1124.)

## 2. *Analysis*

On appeal, Pacific Bell contends that Sciborski's Labor Code section 221 claim was preempted because (1) Pacific Bell was legally entitled to recoup the $36,000 sales commission if it was an advance and (2) the determination whether the commission was an "advance" or "earned" depended on an interpretation of the CBA. Pacific Bell maintains there is no basis to determine whether Sciborski earned the $36,000 commission without interpreting the CBA.

 We reject this argument. As explained below, the determination of whether Sciborski "earned" the commission did not require the court or jury to interpret an express provision of the CBA. To the extent there was a dispute over Pacific Bell's claim that an implied provision supported the recoupment based on Pacific Bell's clerical error in assigning the account, this provision was unenforceable under California law. Thus, there was no

need for interpretation because the issue was whether the asserted implied provision of the CBA complied with state law, and not the meaning of a particular CBA provision.

With respect to the question of when a Pacific Bell employee "earns" a sales commission, the CBA's "Commission Adjustments" provision states: "Because commission rates and the contract price applicable to a sale may change after the employee was advanced a commission and before all conditions have been satisfied to earn a commission, *commissions are earned by employees only when the final commission rate and contract price applicable to a sale are determined by the Company, and all of the conditions to earn commissions have been satisfied. Until the commissions are earned, any commission payments made to employees under this Agreement are advances to be applied against employees' future earned commissions. If employees are advanced commissions, which are not later earned by the employees, the Company will adjust the commission advances by deducting the unearned portion of the commission advances from the employees' future commission payments.* All references to commissions in this Agreement are to commission advances until the commissions become earned." (Italics added.)

At trial, Sciborski argued, and presented evidence, that the $36,000 commission payment was "earned" under this provision because all of the specific conditions for earning a commission were satisfied, including that Pacific Bell had determined "the final commission rate and contract price applicable to [the] sale," the advertisement had been published in the Yellow Pages book, and Pacific Bell had received full and final payment for the advertisement from the customer. Pacific Bell conceded that Sciborski satisfied all the express conditions to earning the commission and she would have "earned" the commission but for the company's "clerical error" in assigning her the account.

Thus, with respect to Sciborski's burden to prove the Labor Code section 221 claim, there was no disputed provision of the CBA that required interpretation by the court or the jury. An employer and an employee may contract to establish express preconditions to earning a commission. (*Koehl, supra*, 142 Cal.App.4th at p. 1330.) Here, there was no dispute with respect to any of these preconditions and/or that Sciborski met the express conditions of the contract. Although in its appellate briefing Pacific Bell argues that the subject of sales commissions is contained on 27 pages of the CBA, Pacific Bell does not identify any of these provisions that were disputed by the parties with respect to whether Sciborski earned the commission.

At trial, Pacific Bell witnesses acknowledged there was no express provision in the CBA providing that a commission is not earned if it is later

determined that there was an employer clerical error that caused an improper assignment. However, Pacific Bell argued that such a contractual condition could be *implied* from the "Commission Adjustments" provision in the CBA and from provisions in the Market Selection document that set forth rules for customer account assignments.

On appeal, Pacific Bell contends that section 301 preempted the Labor Code section 221 claim because the analysis of this defense required the jury to interpret the CBA provisions *regarding account assignments*. For example, Pacific Bell argues that "a review of the collective bargaining agreement makes it clear that the underlying issue here (i.e., whether a 'Loaner Rep' not in 'Primary Module' can be eligible to earn commissions on 'new connects') requires interpretation, not just consultation." In another portion of its briefing, Pacific Bell argues that "in order to determine whether Sciborski was entitled to the [$36,000] commission . . . requires a determination of whether Sciborski was entitled to have the [Expert Home Services] account assigned to her, which requires an interpretation of what the CBA means by Primary and Secondary Module . . . [and] when, and what type, of assignments are appropriate into each module." Pacific Bell thus urges us to conclude that "[t]his type of interpretation, ferreting out what is Primary and Secondary Module and what is properly assigned to who, and how similar situations have previously been handled, is the domain of a labor arbitrator—not a jury."

We agree that the CBA (and incorporated documents) contain detailed and complicated rules for assigning employees to particular customer accounts, and that disputes regarding the meaning of these provisions require interpretation of the CBA. However, the fundamental issue for the jury's determination in this case was not the nature of these assignment rules, i.e., whether Sciborski was a "loaner" representative or whether the new-connect account was properly assigned to her. Although Sciborski presented evidence that she (and her supervisors) were unaware of any problem with the Expert Home Services assignment at the time of the sale, Sciborski did not specifically challenge Pacific Bell's claim that a clerical error may have occurred in her assignment. Instead, she argued that the misassignment based on Pacific Bell's admitted clerical error was not a proper basis for concluding that she did not earn the commission.

No interpretation of the CBA was necessary to resolve this claim. There were provisions in the CBA and the incorporated Market Selection document supporting Pacific Bell's position that the assignment of the new-connect account to Sciborski was inconsistent with her status as a "loaner" representative in the Metro account area. However, there was nothing in these documents stating this inconsistency was a basis for finding a commission

was not earned if the employee performed all of the other work to earn the commission. And there was nothing in these documents providing that Pacific Bell was permitted to deduct amounts from an employee's wages based on the employer's clerical error in the account assignment process.

■ Absent an express provision to this effect, Pacific Bell was not entitled to unilaterally declare that the commission was not earned and use self-help measures to deduct funds from Sciborski's wages that had already been paid to her. Under California law, employers and employees may agree that an employee must satisfy certain conditions before earning a sales commission and an employer may recoup an advance if these conditions are not satisfied. However, to rely on those conditions as a basis for recouping an advance paid for a commission, the condition must be clearly expressed and generally must be set forth in writing. (See *Koehl, supra,* 142 Cal.App.4th at pp. 1333–1337; *Harris v. Investor's Business Daily, Inc., supra,* 138 Cal.App.4th at p. 41; *Steinhebel, supra,* 126 Cal.App.4th at pp. 705–706; see also *Agnew v. Cameron, supra,* 247 Cal.App.2d at pp. 622–624; DLSE Manual, *supra,* §§ 34.2, 34.3.1, 34.9.) Additionally, the conditions must relate to the sale and cannot merely serve as a basis to shift the employer's cost of doing business to the employee. (See *Hudgins, supra,* 34 Cal.App.4th at pp. 1123–1124.)

Under these principles, Pacific Bell's argument that the jury was required to interpret implied provisions in the CBA to determine whether Pacific Bell had a legal right to recoup Sciborski's commission is unsupported by California law. Because the claimed disputed provisions of the CBA were irrelevant to Sciborski's right to recover on her state law claim, they did not support section 301 preemption.

In this regard, the analysis in *Cramer, supra,* 255 F.3d 683 is instructive. In *Cramer,* the plaintiffs alleged a state law violation of a Penal Code provision prohibiting two-way mirrors and concealed cameras in employee restrooms. (*Id.* at p. 688.) The employer argued the claim was preempted because the collective bargaining agreement contained numerous specific provisions pertaining to the employer's right to videotape employees and to prohibit drug and alcohol use. (*Id.* at pp. 688–689, 693.) The employer thus argued that the interpretation of these provisions was necessary to determine the employees' reasonable expectations of privacy and the employees' right to recover on their state law claim. (*Ibid.*) The Ninth Circuit concluded there was no preemption because the collective bargaining agreement did not permit the use of covert surveillance or these specific types of monitoring devices. (*Id.* at p. 694.) The court also concluded that even assuming the CBA could be interpreted as permitting the use of the two-way mirrors to facilitate detection of drug users, these provisions would violate state law and thus the state law

claim would not be preempted. (*Id.* at pp. 695–696.) The court reasoned that "[b]ecause a CBA cannot validly sanction illegal action, . . . the terms of the CBA were irrelevant to plaintiffs' [state law] claim . . . ." (*Id.* at p. 697.)

Applying similar analysis, in *Lujan v. Southern Cal. Gas Co., supra*, 96 Cal.App.4th 1200, the court rejected the defendant's section 301 preemption defense. In that case, the state labor commissioner challenged a utility's calculation of overtime payment for its gas meter readers. (96 Cal.App.4th at p. 1204.) The reviewing court found there was no section 301 preemption because there was no issue regarding the meaning of the collective bargaining agreement with respect to the predicate issue of how the employer calculated overtime pay. (96 Cal.App.4th at pp. 1210–1211.) The court explained the disputed issue was whether the calculation of overtime wages in the collective bargaining agreement complied with state law and *this issue* did not trigger preemption. (*Id.* at p. 1210.)

Similarly, in this case no interpretation was required because California law prohibited Pacific Bell from deducting the approximately $19,000 from Sciborski's wages based on its claimed clerical error. To reach this determination, the jury was not required to interpret the meaning of any provision of the CBA. The fact that the collective bargaining agreement was discussed during trial and that the jury was entitled to consult the document to confirm that there was no express provision in the document allowing the deduction did not trigger federal preemption.

■ "Under settled Supreme Court precedent, '[section] 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.' [Citations.]" (*Cramer, supra*, 255 F.3d at p. 695.) Pacific Bell was required to abide by California labor laws, including Labor Code section 221, and by enacting section 301 Congress did not intend to preempt the enforcement of those laws. Under section 301, federal preemption of a state wage protection statute occurs only where the enforcement of the state law requires the interpretation of a collective bargaining agreement. "[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . [;] it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, . . . and not whether a grievance arising from 'precisely the same set of facts' could be pursued . . . that decides whether a state cause of action may go forward." (*Livadas, supra*, 512 U.S. at pp. 123–124, fn. & citations omitted.) In this case, the claim arose from independent state law and no interpretation of the CBA was required.

Pacific Bell's reliance on various authorities to support its contentions is unavailing. First, Pacific Bell relies on federal decisions that have held state

law wage claims preempted. (See *Firestone v. Southern California Gas Co.* (9th Cir. 2000) 219 F.3d 1063, 1066; *Atchley v. Heritage Cable Vision Associates* (7th Cir. 1996) 101 F.3d 495, 498–501.) However, this reliance is misplaced because in each of these cases, unlike here, it was necessary to interpret the collective bargaining agreement to determine whether the employees' rights were violated.

Pacific Bell's reliance on *Department of Fair Housing & Employment v. Verizon California, Inc., supra*, 108 Cal.App.4th 160 is similarly misplaced. In *Verizon*, the dispute concerned the employee's right to take paid leave without providing medical verification of an injury under the Moore-Brown-Roberti Family Rights Act (Gov. Code, §§ 12945.2, 19702.3). (108 Cal.App.4th at p. 163.) The Court of Appeal held the state law was preempted because the subject of the right to paid leave was covered in the collective bargaining agreement and the issue whether the employee was entitled to the paid leave was dependent on these provisions, and these provisions were consistent with the Moore-Brown-Roberti Family Rights Act. (108 Cal.App.4th at pp. 169–171.) This case is materially different. We have concluded there are no express provisions in the collective bargaining agreement that support Pacific Bell's wage deductions, and the asserted implied conditions are inconsistent with, and not enforceable under, California law.

Pacific Bell's reliance on *Vera v. Saks & Co.* (2d Cir. 2003) 335 F.3d 109 is also unhelpful. In *Vera*, the collective bargaining agreement contained an " 'unidentified returns' " policy expressly providing that the retailer would charge back against commissions all unidentified merchandise returned to the store by a customer. (*Id.* at p. 112.) The plaintiff filed a class action lawsuit against the retailer, alleging the unidentified returns policy violated New York law prohibiting wage deductions. The retailer defended on grounds of section 301 preemption. (335 F.3d at p. 113.) Although the plaintiff acknowledged that the parties were permitted under state law to agree to deduct from wages amounts reflecting unidentified returns, the plaintiff argued that there was no need to interpret the CBA because the agreement did not contain an express provision that commissions were not earned at the time of the sale. (*Id.* at p. 115.) The court rejected the argument concluding that "we must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned." (*Ibid.*)

This case is distinguishable. In *Vera*, the collective bargaining agreement contained an express provision that the retailer would charge back against commissions all unidentified returns at the store, and the plaintiff agreed this provision was proper under New York law. Here, there was no express provision providing that Pacific Bell could charge back against commissions

amounts earned after an account had been improperly assigned based on the employer's clerical error, and any implied provision to that effect is unenforceable under California law.

Pacific Bell's citation to certain portions of the DLSE manual is also unhelpful. Prior to 1994, the California Labor Commissioner took the position that a claim for failing to pay all wages promptly upon discharge (required by Lab. Code, § 201) would not be processed by the state agency if the employee was governed by a collective bargaining agreement. (See *Livadas, supra*, 512 U.S. at pp. 111–112.) In *Livadas*, the United States Supreme Court held this policy was improper. (*Id.* at pp. 121–125.) Pursuant to a consent decree, the Labor Commissioner thereafter promulgated new rules for evaluating the issue whether state wage and hour claims are preempted. (See DLSE Manual, *supra*, § 36.2.2.) Those rules are consistent with our analysis in this case.

### D. *Constructive Discharge Claim*

In addition to her statutory claim, Sciborski brought a claim for wrongful constructive discharge in violation of public policy. This claim was based on the same facts as the Labor Code section 221 cause of action and on evidence showing Sciborski was compelled to leave her job because of the unauthorized wage deductions. An employer who fails to pay an employee his or her wages, or engages in unlawful wage deductions, violates public policy. (See *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147 [37 Cal.Rptr.2d 718].) The jury found (and Pacific Bell does not challenge the finding) that Sciborski was constructively discharged because of the wage deductions.

On appeal, Pacific Bell contends California wrongful discharge law was preempted by federal law because the jury was required to first evaluate whether Sciborski "earned" the wages under the CBA provisions to determine whether Sciborski met her burden to show a public policy violation. This contention is identical to the argument raised with respect to Sciborski's Labor Code section 221 claim, and for the reasons discussed above, we reject this argument.

### II. *Attorney Fees*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

\*See footnote, *ante*, page 1152.

## DISPOSITION

Judgment affirmed. The parties to bear their own costs.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied May 30, 2012, and the petition of appellant Pacific Bell Directory for review by the Supreme Court was denied August 8, 2012, S203407. Werdegar, J., did not participate therein.