Filed 9/14/15  Bellflower Unified School Dist. v. Meeks CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BELLFLOWER UNIFIED SCHOOL DISTRICT, | B259780 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS138423) |
| v. | |
| KARL MEEKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth White, Judge.  Reversed and remanded with directions.

Reich, Adell & Cvitan, Marianne Reinhold, Carlos R. Perez, Angela Serranzana for Defendant and Appellant.

Law Offices of Eric Bathen, Eric J. Bathen, Jordan C. Meyer for Plaintiff and Respondent.

_____

After a public school teacher lost a set of keys, his employer deducted from his paycheck $1,200 to cover the cost of rekeying schoolrooms.  The school district violated state law.  The employee did not authorize a wage deduction to rekey the school, and the Wage Garnishment Law forbids any employer, public or private, from resorting to extra-judicial wage seizures to recoup a debt from an employee.  (Code Civ. Proc., § 706.020 et seq.)[1]  We reverse the judgment in favor of the school district.

## FACTS

Karl Meeks works for the Bellflower Unified School District (BUSD).  BUSD provided Meeks with keys to its campus.  Meeks signed a "Key Requisition/Loss Form" (the Key Form).[2]  He chose not to check a box stating, "I do not wish to be issued a key. I prefer that the site staff unlock and lock my door."

Meeks lost BUSD's keys.  As a result, locks were changed in eight classrooms and other facilities:  at $150 per room, the total cost was $1,200.  BUSD deducted $1,200 from Meeks's paycheck to recoup the cost of rekeying school locks.  BUSD did not obtain a court judgment against Meeks before seizing his wages.

Meeks filed a claim with the Commissioner of Labor (the Commissioner) seeking reimbursement of the paycheck deduction.  The Commissioner awarded Meeks the full $1,200, plus interest.  BUSD sought de novo review in the trial court.

## THE TRIAL COURT'S RULING

The trial court found that Meeks is employed as a teacher; his union's collective bargaining agreement allows members to agree salary deductions; BUSD policy requires employees to sign the Key Form, allowing them to elect or decline keys; employees who receive keys consent to payroll deductions to cover the cost of rekeying in the event of

---

[1]   Unlabeled statutory references in this opinion are to the Code of Civil Procedure.

[2]   The Key Form reads, "If you lose a district key, the district will deduct $25.00 from your payroll check.  If a school needs to be re-keyed due to your loss, you may be charged the cost of re-keying the school as follows:  Single Room up to $150.00; Elementary School up to $5,500.00; High School up to $15,000.00."  Meeks checked a box stating "I have read and agree to the above district key policy and conditions."

2

loss; Meeks elected to receive keys and acknowledged financial responsibility in the event of loss; he lost his keys and the cost of rekeying was deducted from his paycheck; he did not object to paying for the loss for one and a half years; and he filed a claim with the Commissioner, who ordered BUSD to reimburse Meeks. The court determined that the Labor Code sections cited in the administrative decision do not apply to public entities like BUSD. The court gave judgment to BUSD.

## DISCUSSION

### 1. Appeal and Review

Meeks timely appeals from the judgment. (§ 904.1, subd. (a)(1).) He originally sought administrative relief to recover his wages. (Lab. Code, § 98 et seq.) Either party may seek review of the administrative decision by appealing to the superior court, which hears the case de novo. (Lab. Code, § 98.2, subd. (a).) The court conducts a new trial, giving no weight to the administrative decision: it is "'truly "a trial anew in the fullest sense,"'" as if it had never been before the Commissioner. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116.)

The trial court's decision "is subject to a conventional appeal." (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 948.) Statutory interpretation is a question of law, subject to independent review, as are undisputed facts. Wage laws are broadly construed in favor of the employee, in a manner that best effectuates their protective intent. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840; *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027.) The material evidence in this case—including the content of the Key Form—is undisputed. The appeal presents only questions of law.

### 2. Stipulated Record

Meeks takes issue with language in the judgment that "[t]he parties stipulate to the facts underlying the dispute before the court." He argues that "[t]he trial court based its decision on a stipulation between the parties which never existed." In a minute order, the court indicated that it took the matter under submission to review evidence contained in

3

an "Exhibit Binder," submitted under "a Stipulation to the Record." The court misspoke when it referred to a factual stipulation.

Meeks failed to bring this defect to the attention of the trial court, depriving the court of an opportunity to correct its wording. A party may object to a proposed statement of decision, and bring any ambiguities to the court's attention. (Cal. Rules of Court, rule 3.1590(g).) Here, counsel agreed to delete from the proposed statement of decision a reference to the Commissioner. Yet counsel for Meeks did *not* challenge the wording regarding a factual stipulation. The court signed the judgment, unaware of its misstatement regarding the stipulated record.

"[I]t would be unfair to allow counsel to lull the trial court and opposing counsel into believing the statement of decision was acceptable, and thereafter to take advantage of an error on appeal although it could have been corrected at trial. . . . It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138; *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 744.) This error could have been easily corrected below. It is too late to challenge it now. Plainly, the trial court made findings based on the stipulated record contained in an exhibit binder.

### 3. The Commissioner's Authority

Meeks contends that BUSD "would be hard pressed to argue that the Labor Commissioner had no legal authority to adjudicate Meeks's claim for unlawful wage deductions." He describes at length the scope of the Commissioner's authority.

If an employer fails to pay wages in the amount required by contract, the employee may pursue *judicial* relief by filing a civil action for breach of contract/wages due and owing, or seek *administrative* relief by filing a claim with the Commissioner. (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1115.) When the administrative option is selected, the Commissioner conducts a hearing and makes a decision regarding the employee's wage claim, subject to de novo trial court review. (*Id.* at pp. 1115-1116.) Appellant is correct that the Commissioner had authority to decide his

4

wage claim; however, we do not consider the administrative decision on appeal, and focus only on the trial court's decision.

## 4. **The Wage Garnishment and Attachment Laws[3]**

The conditions of public employment are generally established by statute: "[O]nce a public employee has accepted employment and performed work for a public employer, the employee obtains certain rights arising from the legislative provisions that establish the terms of the employment relationship—rights that are protected by the contract clause of the state Constitution from elimination or repudiation by the state. . . . [A]mong the rights protected by the contract clause is 'the right to the payment of salary which has been earned.'" (*White v. Davis* (2003) 30 Cal.4th 528, 566.)

The Legislature protects the salaries earned by public employees through the Wage Garnishment Law, which protects wages from creditors (§ 706.010 et seq.), and the Attachment Law (§ 482.010 et seq.), which requires notice and a hearing before property can be attached.[4] Earnings are exempt from attachment. (§ 487.020, subd. (c).) Both statutory schemes apply to public entities. (§§ 481.170, 481.200, 706.011.)

The Wage Garnishment Law applies to "earnings," meaning compensation payable by an employer to an employee for personal services, whether denominated as wages, salary, commission, or otherwise; an "employer" is a person for whom the employee performs services and includes individuals, corporations, partnerships, *and a public entity*. (§ 706.011, subds. (a), (c), (d), (g).) The law prohibits an employer from withholding the earnings of an employee for payment of a debt, unless appropriate judicial procedures are followed. (§ 706.020.) "This rule applies to public entities as

---

[3]    Meeks relies upon the Wage Garnishment Law in his opening brief. BUSD elected to ignore the issue, focusing only on the Labor Code. Though a respondent does not forfeit an issue by failing to address it, this is a risky tactic. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2014) ¶ 9:69, p. 9-24.)

[4]    Garnishment, which refers to the seizure of property owing or belonging to a debtor (but presently in the hands of a third party), is a sub-category of attachment. (*Randone v. Appellate Department* (1971) 5 Cal.3d 536, 543, fn. 3.)

5

well as private persons." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 706.020, p. 223.)

*California State Employees' Assn. v. State of California* (1988) 198 Cal.App.3d 374 is instructive, if not dispositive, on the issue of whether a public entity may seize its employees' wages. There, the state illegally recouped erroneous salary advances by deducting the debt from employee paychecks. The Court of Appeal found that the Wage Garnishment Law "provides the exclusive judicial procedure" for executing against the wages of employees, and the Attachment Law "expressly prohibits any prejudgment attachment or levy of execution against wages." (*Id.* at p. 377; *Randone v. Appellate Department*, *supra*, 5 Cal.3d at p. 545, fn. 6.)

Public policy provides substantial protection for wage earners to maintain their standard of living, and fundamental due process prevents an employer from reaching an employee's wages by setoff, thereby accomplishing what no other creditor would have the power to do. (*California State Employees' Assn. v. State of California*, *supra*, 198 Cal.App.4th at p. 377.) In short, the state must pay its employees the wages actually earned, "and the fact that the employee owed a debt to the state, even for a prior overpayment, does not 'affect the validity or alter the amount'" of current wages owed: the law "protect[s] earnings from such extra-judicial seizures." (*Id.* at p. 378. Accord, *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 4-6 [a private employer had no right to a setoff against wages due and owing, as a way to recover an employee's debt under a promissory note]; *Sniadach v. Family Finance Corp.* (1969) 395 U.S. 337, 339-342 [prejudgment wage garnishments by an employer without a hearing violate the due process clause of the U.S. Constitution].)

Similar reasoning was deployed in a lawsuit against a city that seized a police officer's final paycheck to repay itself for the cost of training him. (*City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, 1484.) The court of appeal held that the city's conduct violated the federal Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201-219), which prohibits an employer from withholding wages to recoup a debt: the statutory protections cannot be waived, **even if the employee agreed in writing to the**

6

**withholding.** (*City of Oakland*, at p. 1493.) Moreover, the city violated California law forbidding an employer from setting off debts owed by an employee against wages due. (*Id.* at pp. 1491-1493, 1499-1501.)

The Wage Garnishment Law applies here. BUSD was not permitted to seize Meeks's earned wages to repay itself for the cost it incurred in rekeying its classrooms. It does not matter that Meeks signed the Key Form. A deduction from an employee's wages to recoup a claimed debt by the employer defeats public policy protecting wage earners and violates principles of due process.

## 6. Meeks Did Not Authorize a Setoff from His Wages

The Legislature prohibits employers from deducting any part of earned wages, except in very narrowly defined circumstances provided by statute. (*Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1166*.*) One of the narrowly defined circumstances allowing an employer to withhold or divert a portion of an employee's wages arises when the employee expressly authorizes it in writing to cover insurance premiums, hospital or medical dues, and health and welfare or pension plan contributions expressly authorized by a collective bargaining or wage agreement. (Lab. Code, § 224.)[5]

BUSD's collective bargaining agreement with Meeks's union allows for "optional deductions" that a member may elect to have taken from his or her gross earnings. BUSD contends that Meeks expressly authorized deductions from his wages for the expense of lost keys. The argument fails. The Key Form states that BUSD "will deduct $25.00 from your payroll check" if Meeks loses keys. The Key Form says nothing about deducting any more than $25 from a paycheck; rather, it says "*you may be charged* the

---

[5]    Labor Code section 224 states that an employer may withhold or divert a portion of an employee's wages when it "is required or empowered to do so by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute, or when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement."

cost of re-keying the school." (See fn. 2, *ante.*) The language in the Key Form appears to leave the option of charging an employee for lost keys to the discretion of BUSD, without specifying any repayment terms. The prospect of possibly being charged is not an express authorization to deduct $1,200 from a paycheck for lost keys.

In any event, the Key Form has nothing to do with the type of pre-authorized medical insurance or pension deductions contemplated by Labor Code section 224, which are intended to benefit the employee, not the employer. (*City of Oakland v. Hassey*, *supra*, 163 Cal.App.4th at p. 1501.) "An employer is not entitled to 'require[] its employees to consent to unlawful deductions from their wages.'" (*Sciborski v. Pacific Bell Directory*, *supra*, 205 Cal.App.4th at p. 1168.) The collective bargaining agreement did not (and cannot) give BUSD the ability to contract for a wage garnishment that is prohibited by state law. (*Id.* at p. 1172; *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 212; *United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510, 1518-1519.)

## CONCLUSION

BUSD was not entitled to engage in self-help by deducting $1,200 from Meeks's wages to reimburse itself for the cost of rekeying classrooms. California's strong public policy protecting wage earners prohibit an employer, whether public or private, from deducting amounts from an employee's wages as a setoff for a claimed debt stemming from the employee's negligent loss of the employer's property, in this case, a set of keys.

## DISPOSITION

The judgment is reversed. The case is remanded with directions to enter judgment in favor of Karl Meeks, awarding him $1,200 plus interest. Meeks is entitled to recover his costs on appeal from the Bellflower Unified School District.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

ASHMANN-GERST, J.          HOFFSTADT, J.

8