[No. B233226. Second Dist., Div. Three. July 10, 2012.]

SAUL DeLEON, Plaintiff and Appellant, v.
VERIZON WIRELESS, LLC, Defendant and Respondent.

## COUNSEL

Initiative Legal Group, Miriam Schimmel, Glenn A. Danas and Katherine Den Bleyker for Plaintiff and Appellant.

Jones Day, Deborah C. Saxe, Claire S. Lux and Brian M. Jorgensen for Defendant and Respondent.

## OPINION

**ALDRICH, J.**—Plaintiff Saul DeLeon, on behalf of himself and other aggrieved employees, appeals from the judgment following the trial court's order granting summary judgment in favor of defendant AirTouch Cellular doing business as Verizon Wireless, LLC (Verizon Wireless). DeLeon was a former retail sales representative for Verizon Wireless and filed a complaint seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698)[1] for a violation of section 223,[2] which prohibits the secret underpayment of wages. DeLeon's compensation plan included commission payments, which Verizon Wireless could recover, or charge back against future commissions, if certain conditions were not met. We must determine whether the chargeback provision violates section 223 by "secretly pay[ing] a lower wage while purporting to pay the wage designated by statute or by contract." Based upon the undisputed facts, we conclude the commission payments were advances, not wages, and the chargeback provision did not violate the Labor Code because Verizon Wireless may legally advance commission payments to its retail sales representatives before completion of all conditions for payment, and charge back any excess advance over commissions earned against future advances should the conditions not be satisfied. Thus, we affirm.

---

[1] Unless stated otherwise, all further statutory references are to the Labor Code.

[2] Section 223 states: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Undisputed Facts*

DeLeon worked as a retail sales representative for Verizon Wireless. His compensation was based upon the 2004 and 2005 Sales Compensation Plans for Retail and Telesales Channels (unless specified, compensation plans).

### a. *The Compensation Plans*

Retail sales representatives received an hourly wage plus monthly commissions as described in the compensation plans. Our focus is on the provisions in the compensation plans addressing commissions, chargebacks, and incentive payments.

#### (1) *Commission Earned at the End of the Chargeback Period*

The compensation plans explain that commissions on the sale of cell phone service plans are paid in advance, but not earned until the expiration of a chargeback period during which the customer may cancel the service. The 2004 compensation plan stated: "Customer retention is an important element of earning any commission; therefore your commission for sales of service is not earned until after the expiration of the applicable chargeback period. However, as a benefit to employees so that they will have use of the money before it is actually earned, Verizon Wireless has a policy of advancing commission dollars, if certain requirements are met, for the sale of commission-eligible services." The 2005 compensation plan stated: "Your commission . . . is not earned and the sale does not 'vest' until . . . your customer satisfies his [or her] contract during the applicable chargeback period."

#### (2) *Chargeback of Commission Advance*

The compensation plans include a section entitled, "Chargeback of Commission Advance." The 2004 compensation plan stated: "In the event a customer disconnects service during the commission chargeback period, your commission is subject to adjustment by the original amount advanced for the sale. Your commission advance will be adjusted to account for disconnects within the chargeback period . . . ." The 2005 compensation plan stated if a customer disconnects service during the chargeback period, "the sale is not considered vested . . . ."

The chargeback provision did not affect base pay. The compensation plans explained that if a customer disconnected service during the chargeback

period, the employee's future commission advances would be reduced by the original amount advanced for the sale.

The chargeback periods under the compensation plans were (1) 365 days for postpaid price plans, (2) 150 days for prepaid price plans, and (3) 120 days for enhanced services.

Verizon Wireless generated monthly commission statements for retail sales representatives. The commission statements used the term "commission advance," and, when appropriate, also contained chargeback information.

### (3) Incentive Allowance Payment

The compensation plans also had an "incentive allowance" for new hires. During the incentive allowance period, retail sales representatives were "advanced 100% of target commission or your actual performance, whichever is greater." All sales completed during the incentive allowance period were "subject to the applicable chargeback period."

### (4) Acknowledgement and Training

The compensation plans contained a section entitled "Acknowledgement Form." The acknowledgement in the 2004 compensation plan stated: "My signature below and/or my continuing work on and after the effective date of this Plan, indicates that I have received and read the Verizon Wireless Sales Compensation Plan provided to me in this package dated February 1, 2004 and that the terms and conditions of the applicable plan will govern how sales commissions and incentives are advanced, earned and issued to me." The 2005 compensation plan contained the same paragraph.

The compensation plans in the record are not signed.

At new hire orientation, Verizon Wireless provides a written copy of the applicable compensation plan to its retail sales representatives, reviews it with them, and conducts training on how the compensation plan operates. Each year, Verizon Wireless provides training on the compensation plan effective for that year.

### b. The Compensation Plans Governed DeLeon's Employment

DeLeon worked as a retail sales representative from August 2004 to April 2005. He read and received copies of the 2004 and 2005 compensation plans. During his new hire orientation, he was "trained on the compensation plan that was in effect at the time." Although DeLeon testified that he did not

remember any online training related to the 2005 compensation plan, DeLeon's personnel file indicates that he completed an online training course.

As a retail sales representative, DeLeon was entitled to and received incentive allowances and monthly commissions as set forth in the compensation plans. Verizon Wireless, however, extended his incentive allowance period to four months. During the incentive-allowance period, when DeLeon's sales performance exceeded his target commission, he received more than the incentive allowance. Following the incentive-allowance period, DeLeon received commission advances for sales as described in the compensation plans. These commission advances were subject to the chargeback provision.

Verizon Wireless prepared commission statements for DeLeon, which identified "Commission Advancement," and "Sales Chargebacks." His paychecks initially referred to the incentive allowance as a "guarantee," and after the expiration of the incentive-allowance period, his paychecks listed "commissions."

DeLeon resigned on or about April 11, 2005.

### 2. Summary Judgment Proceedings

#### a. DeLeon's Class Action Complaint

The operative fourth amended class action complaint (complaint) seeks relief under PAGA, alleging violations of (1) sections 510 and 1198 (overtime wages), (2) section 223 (secret underpayment of wages), (3) sections 201 and 202 (wages due and payable upon discharge or resignation), (4) section 204 (wages due and payable), and (5) section 226, subdivision (a) (recordkeeping). These Labor Code violations stem from the allegations that Verizon Wireless violated section 223 by unlawfully taking chargebacks from the earned commissions of its sales representatives.[3] As DeLeon acknowledges, all the other Labor Code violations alleged in the complaint are derivative of the section 223 claim.

---

[3] When the original complaint was filed, another putative class action was pending based upon the allegation that Verizon Wireless made unlawful chargebacks against commissions. (DeLeon v. Verizon Wireles▪ (Cal.App.) (DeLeon I).) The parties eventually reached a settlement. In DeLeon I, we concluded that the doctrine of res judicata barred DeLeon from seeking relief on behalf of class members who settled the prior class action against Verizon Wireless. DeLeon was given leave to amend to represent a class injured after the prior settlement. Thus, DeLeon seeks to represent retail sales representatives who opted out of the settlement in DeLeon I, and those retail sales representatives who were employed after the close of the prior class action.

b. *Motion for Summary Judgment*

Verizon Wireless moved for summary judgment on the ground that the chargeback provisions in the compensation plans do not violate section 223, and therefore DeLeon is not entitled to recover the civil penalties pursued in this action. Specifically, Verizon Wireless contended its chargeback policy did not violate section 223 because (1) DeLeon's commission payments were advances, not wages; (2) the chargeback policy was set forth in the compensation plans and was not a "secret" underpayment of a lower than agreed-upon wage; and (3) the chargeback provision did not result in a payment of a lower wage than the wage designated in the compensation plans. Since the section 223 claim failed, Verizon Wireless contended the remaining derivative claims also failed.

DeLeon opposed the motion, arguing that a triable issue of fact existed as to whether the commission payments he received qualified as "advances." Additionally, DeLeon maintained triable issues of fact existed as to whether DeLeon and the aggrieved employees he seeks to represent agreed to and understood the chargeback policy, and whether the 365-day chargeback period was reasonable.

After a continuance to cure technical defects in the summary judgment motion, and further briefing by both parties, the trial court granted the motion. The court stated the Verizon Wireless compensation plan was "crystal clear" that commission payments were advances subject to chargebacks, and that customer retention for the full term of the service contract was a "necessary condition for actually earning the commissions." The trial court also concluded that there was no statutory or common law bar to match the vesting of a commission to the duration of the service sold.

The trial court entered judgment in favor of Verizon Wireless, and DeLeon timely appealed.

## DISCUSSION

■ Section 223 mandates that commissions paid to DeLeon and the aggrieved employees he seeks to represent must be consistent with the applicable contract for wages, in this case, the compensation plans. As noted, section 223 addresses the secret underpayment of contractual or statutory wages. We must decide whether the chargeback provision in the compensation plans violates section 223 by underpaying commissions owed to retail sales representatives. Rather than framing this dispute as a legal issue,

DeLeon contends there are disputed material facts as to whether the commission payments are advances or wages, and whether the chargeback provision in the compensation plan is lawful (and enforceable) under section 223.[4]

Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].) On appeal after a summary judgment has been granted, we independently review the record to determine whether a triable issue exists. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) As shall be explained, we resolve the legal question presented here, and we find no triable issues of disputed fact to support any cause of action in the complaint based upon a violation of section 223.

1. *Commission Payments in the Verizon Wireless Compensation Plans are Advances, Not Wages Until the Conditions Have Been Satisfied*

■ Section 223 states that when a contract requires an employer to pay a certain wage, it is "unlawful to secretly pay a lower wage" than designated in the contract. Under the Labor Code, "wages" includes "all amounts for labor performed by employees . . . whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (§ 200.) Sales commissions are wages. (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 704–705 [24 Cal.Rptr.3d 351] (*Steinhebel*).) But, the right to commissions depends upon the terms of the contract for compensation. (*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1330 [48 Cal.Rptr.3d 749] (*Koehl*).) Contractual terms must be met before an employee is entitled to commissions. (*Steinhebel*, *supra*, at p. 705.)

■ *Steinhebel*, *supra*, 126 Cal.App.4th 696 recognized and enforced a compensation plan that permitted an employer to advance commissions to its telemarketers and then by agreement charge back any excess advance over commissions earned against any future advance. (*Id.* at p. 704.) In *Steinhebel*, the telemarketers executed acknowledgements indicating they read and understood the terms of the agreement, which specified that commissions were payable only on commissionable sales, that is, subscriptions that were verified sales and were kept by the customer for at least 28 days. (*Id.* at p. 705.) As the *Steinhebel* court noted: "The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission

---

[4] It is undisputed that DeLeon and the aggrieved employees he seeks to represent received their hourly wage.

has yet to occur or its occurrence as yet is otherwise unascertainable." (*Id.* at p. 705.) The *Steinhebel* court concluded that an advance is not a wage because all conditions for performance have not been satisfied. Thus, the chargeback provision at issue in *Steinhebel* did not violate section 221, which prohibits an employer from taking back wages already paid.[5] (126 Cal.App.4th at p. 708.)

Under the terms of the Verizon Wireless compensation plans, like the telemarketers in *Steinhebel*, DeLeon's right to commissions was subject to certain conditions as set forth in the compensation plans. Commissions were earned and payable only if the customer did not discontinue the cell phone service plan during the applicable chargeback period. Until then, DeLeon had not made a commissionable sale. (See *Steinhebel*, *supra*, 126 Cal.App.4th at p. 705.) Although the parties dispute whether the retail sales representatives did, or did not, have further responsibilities after the sale, this is immaterial because DeLeon's commissions depended upon the conditions set forth in the compensation plans. (Compare *Steinhebel*, *supra*, at p. 706 with *Koehl*, *supra*, 142 Cal.App.4th at p. 1332.) As specifically described in the compensation plans, DeLeon received advances and his commissions were earned at the expiration of the chargeback period. Section 223 refers to the underpayment of wages. Commission advances are not wages. (§ 200.)

Relying on *Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28 [41 Cal.Rptr.3d 108] (*Harris*), DeLeon contends that the issue of whether he received advances on commissions or earned commissions at the time of sale is a disputed issue of fact. In *Harris*, employees filed a class action lawsuit alleging unlawful commission deductions under section 221, arising from a chargeback against commissions if a customer canceled the subscription during the applicable period. Unlike here, the contested policy did not state that commission payments were advances, and the sales personnel appeared to earn their commission at the point of sale. The commission policy stated: " 'Any subscription which is canceled within 16 calendar weeks from the start, or restart, date of the subscription will be charged back to the week sold.' " (*Harris*, *supra*, at p. 40.) The company later revised the policy to state that commissions would be advanced to sales associates. (*Id.* at p. 40.) The plaintiffs contended that a triable issue of fact existed as to whether the commissions paid under the earlier policy constituted wages. The *Harris* court agreed and distinguished *Steinhebel*, based upon the terms of the respective compensation agreements, noting that in *Steinhebel* the employment agreement clearly identified the commission as an advance. (*Id.* at p. 41.) The *Harris* court also reasoned that, unlike *Steinhebel*, the employees did not expressly agree to the chargeback policy in writing, and even if they

---

[5] Section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

knew about the policy, the company's materials raised a triable issue of fact as to whether the chargeback policy constituted an unlawful wage deduction. (*Id.* at p. 41.)[6]

■ *Harris* is inapposite. As we have stated, unlike *Harris*, the language in the Verizon Wireless compensation plans clearly and expressly stated the retail sale representative's commissions were not earned at the time of sale of the cell phone service plan and referred to commission payments as "advances." While commission payments were made in advance, commissions were earned only if the customer did not cancel the cell phone service plan before the expiration of the chargeback period. This policy does not underpay "wages." Rather, when a chargeback occurs, the retail sales representative receives a reduced amount of the next advance to account for the earlier advance that never became a commissionable sale. If we were to hold that commission advances were "the secret underpayment of wages," we would agree with the *Steinhebel* court that the most likely result would be the elimination of commissions for Verizon Wireless retail sales representatives. It would make no business sense to pay a commission when a retail sales representative has not made a commissionable sale.

Adopting DeLeon's position also might result in the loss of a benefit to the retail sales representatives. As stated in *Steinhebel*, commission advances give sales employees access to cash rather than having to wait for the contingencies to occur. (*Steinhebel, supra,* 126 Cal.App.4th at p. 708.) Without a chargeback policy, the Verizon Wireless retail sales representatives would have to wait up to a year to earn their commissions.

We have considered and rejected DeLeon's additional arguments that his commission advances were wages, and find none raises a factual dispute as to the explicit terms of the compensation plans describing the commission payments as advances.[7] Since commission advances are not wages, there is no statutory violation of section 223.

---

[6] The *Harris* court also distinguished *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109 [41 Cal.Rptr.2d 46] (*Hudgins*). (*Harris, supra,* 138 Cal.App.4th at p. 41.) In *Hudgins,* the court held that Neiman Marcus's commission program violated section 221 because it unlawfully deducted "a pro rata share of commissions previously paid for 'unidentified returns' from the wages of all sales associates in the section of the store where the merchandise is returned." (*Hudgins, supra,* at p. 1117.)

[7] DeLeon contends the commission payments are not advances as stated in the compensation plans because (1) the commissions are calculated after the end of the month in which they are earned and are paid on a monthly basis; (2) the commissions are not true incentives, as Verizon Wireless has an incentive program; (3) DeLeon's paycheck lists the payments as "commissions," not "commission advances"; and (4) commissions, like wages, are paid on termination.

## 2. The Chargeback Provision Does Not Violate Section 223

█ DeLeon next contends the chargeback provision in the compensation plans violates section 223 because the retail sales representatives were secretly underpaid the commissions they were entitled to under the compensation plans. "[S]ection 223 was enacted to address the problem of employers taking secret deductions or 'kickbacks' from their employees. [Citations.]" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1205 [78 Cal.Rptr.3d 572].) The employer pays the wage required by a statute or contract but secretly deducts amounts or requires employees to pay back a portion of the wages. The underpayment of wages is a secret being kept from "applicable enforcement authorities," not from the employees. (*Ibid.*, italics omitted.) As stated in *Amaral v. Cintas Corp. No. 2*, the "secret" is not the " 'underpayment' but rather the existence of the employer's obligation to pay more." (*Ibid.*)

The chargeback provision does not require the employee to pay back a portion of his or her wages or does not secretly deduct amounts owed to the employee, so that the retail sales representatives are earning less than what is stated in the compensation plans. The chargeback provision reconciles commission advances, not earned commissions, by reducing the next advance on commissions to the employee. This practice does not violate section 223 because DeLeon and the aggrieved employees he seeks to represent were paid commissions owed to them on commissionable sales as set forth in the compensation plans.

Although not based upon the statutory language in section 223, DeLeon contends that case law has established a chargeback provision is lawful and enforceable only if the employee expressly authorized the deduction. He further argues the chargeback provision must be clear and unambiguous to the employee, and must be reasonable and related to the commissionable sale. We discuss each argument in turn, finding no statutory basis for DeLeon's contention that the chargeback provision in the compensation plans is an illegal agreement for a deduction of earned wages.

### a. Employment Is Acceptance of the Verizon Wireless Compensation Plans

█ Relying on *Steinhebel, supra,* 126 Cal.App.4th 696, DeLeon contends that a chargeback provision violates section 223 unless the employee has read, signed, and authorized such deductions. (*Steinhebel, supra,* at p. 710; see *Koehl, supra,* 142 Cal.App.4th at p. 1334.) *Steinhebel* and *Koehl* reference section 224, which permits certain wage deductions with written authorization. (*Steinhebel, supra,* at pp. 707–708; *Koehl, supra,* at pp. 1337–1338.) Section 224 provides in pertinent part that "[t]he provisions of Sections 221, 222 and 223 shall in no way make it unlawful for an employer to withhold or

divert any portion of an employee's wages . . . when a deduction is expressly authorized in writing by the employee to cover . . . deductions not amounting to a rebate or deduction from the standard wage arrived at . . . pursuant to wage agreement or statute . . . ." Under section 224, an employer may deduct wages if the deduction is authorized in writing, and does not reduce the employee's standard wage. Thus, the *Koehl* court also upheld the chargeback provision under section 224, concluding the deduction was authorized and commission advances are not standard wages. (*Koehl*, at pp. 1337–1338.) Neither *Koehl* nor *Steinhebel* addressed whether there might be other circumstances in which an employee might consent to a written chargeback provision. While *Harris*, *supra*, 138 Cal.App.4th at page 41 distinguished *Steinhebel*, noting in that case the employees did not expressly agree to the chargeback policy in writing, the court's concern was a dispute regarding the compensation terms. (*Id.* at p. 41; see *Koehl*, *supra*, at pp. 1334–1335.)[8]

■ Section 223 does not state that the compensation or wage contract must be a written contract signed by the parties. "[C]ases have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission." (*Koehl*, *supra*, 142 Cal.App.4th at p. 1331.) Among the fundamental contract principles mentioned in *Koehl*, *Steinhebel*, and *Prudential Ins. Co. v. Fromberg* (1966) 240 Cal.App.2d 185 [49 Cal.Rptr. 475], is written acceptance or acknowledgment of the compensation contract offered by the employer to the employee. (*Koehl*, *supra*, at pp. 1322, 1334; *Steinhebel*, *supra*, 126 Cal.App.4th at p. 710; *Prudential Ins. Co. v. Fromberg*, *supra*, at p. 187.) But, a signed acknowledgment that the employee read, understood, and agreed to the compensation plan as was the case in *Steinhebel* and *Koehl*, is not the only form of assent under contract law. (See Civ. Code, § 1584 ["Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."].)

---

[8] After oral argument in this case, the Fourth District, Division One, decided *Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152 [140 Cal.Rptr.3d 808] (*Sciborski*), petition for review pending, petition filed June 19, 2012 ■ In *Sciborski*, Pacific Bell contended that the plaintiff's section 221 claim was preempted by federal labor law because the jury had to interpret implied provisions of the collective bargaining agreement to determine whether the company had a legal right to recoup the plaintiff's commission. (*Sciborski*, at p. 1168.) The *Sciborski* court rejected this preemption argument, concluding under state law that absent an express chargeback provision, Pacific Bell could not unilaterally declare that a commission was not earned. (*Id.* at pp. 1168–1171.) *Sciborski* reiterates that employers and employees may agree that an employee must satisfy certain conditions before earning a sales commission and an employer may recover advances against future commissions if these conditions are not met. The conditions, however, must be clearly expressed and generally set forth in writing.

The Verizon Wireless compensation plans did not require a signed acknowledgment. As stated in the compensation plans, a retail sales representative consented to the compensation contract by either written acknowledgment or continued performance. DeLeon accepted the offer of employment and understood that the terms in the compensation plans governed his employment. Upon performance of the services, Verizon Wireless was obligated to pay his compensation as described in the compensation plans. The compensation plans setting forth the chargeback provision were clear and unambiguous. Moreover, to ensure that DeLeon and those bound by the compensation plans understood the chargeback provision, Verizon Wireless conducted annual training on how it operated. DeLeon's continued performance was his assent to be bound by all the terms of the compensation plans.

### b. DeLeon's Conduct Established Mutual Understanding of the Compensation Plans That Governed His Employment

DeLeon next contends that there was no "meeting of the minds" on his compensation while employed by Verizon Wireless because, even if he accepted employment under the terms of the compensation plans, he did not understand what the term "advances" meant. In other words, DeLeon understood he would receive an hourly wage, and also understood he would be paid commissions, but he had no idea how he would be paid commissions on sales. If no compensation contract exists between the parties, section 223 does not apply. Unlike section 221, the statute at issue in *Steinhebel*, section 223 is based upon a wage designated by contract, and the secret underpayment of that designated wage.

DeLeon's argument also fails under contract principles. There is no contract until there is mutual consent of the parties. (Civ. Code, §§ 1550, 1565.) The manifestation of mutual consent is generally achieved through the process of offer and acceptance. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 117, pp. 156–157.) Mutual consent necessary to the formation of a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. [Citation.]" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 [127 Cal.Rptr.2d 145], disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524 [113 Cal.Rptr.3d 327, 235 P.3d 988].) Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court. (*Alexander v. Codemasters Group*, at p. 141.)

Here, DeLeon received copies of the compensation plans, received training on how the chargeback provision operated, and received commission

statements setting forth his commission advances and chargebacks. These undisputed facts objectively establish that DeLeon understood that he would be compensated under the terms of the compensation plans. As stated in *Prudential Ins. Co. v. Fromberg, supra*, 240 Cal.App.2d 185, " 'When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent.' [Citation.]" (*Id.* at p. 189.) DeLeon's unexpressed lack of understanding regarding the use of the term "advances" does not raise a triable issue of fact as to whether the compensation plans governed his right to commissions during his employment with Verizon Wireless.

### c. The Chargeback Provision Is Not Unconscionable

DeLeon also contends that the chargeback provision is an unconscionable term of his compensation contract and should not be enforced. Although unconscionability is a legal issue, he maintains a disputed issue of fact exists as to whether the one-year chargeback period is reasonable. He also argues the chargeback provision impermissibly shifts the business loss to the employee. We reject both arguments.

 Unconscionability has both a procedural and substantive element. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113–114 [99 Cal.Rptr.2d 745, 6 P.3d 669].) The procedural element focuses on oppression or surprise arising from unequal bargaining power. (*Id.* at p. 114.) The substantive element focuses on overly harsh or one-sided results. (*Ibid.*) Both elements must be present, but they need not be present to the same degree. (*Ibid.*) Unconscionability is a question of law. (*Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1804 [23 Cal.Rptr.2d 80].)

 DeLeon's arguments focus on substantive unconscionability. Substantive unconscionability is shown only by contract terms so one-sided as to " ' "shock the conscience." ' " (*Koehl, supra*, 142 Cal.App.4th at p. 1340.) Thus, we decline DeLeon's request to impose a reasonableness standard, or to thrust this court into " 'the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable.' " (*Ibid.*; see *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391 [54 Cal.Rptr.2d 477] [rejecting reasonableness standard].) Verizon Wireless offered to consumers a cell phone service plan, and paid its retail sales representatives commission on sales. The company's choice of the relevant chargeback period does not "shock the conscience." The net compensation a retail sales representative earns bears a direct relation to the product (cell phone service contract) he or she sold.

We also reject DeLeon's contention the chargeback provision is unconscionable because it charges retail sales representatives with business losses. The cases holding that an employee cannot be charged with business losses do not apply. *Hudgins, supra,* 34 Cal.App.4th 1109 is illustrative, holding the employer's chargeback policy for unidentified sales returns unlawfully charged sales associates with business losses. (*Id.* at pp. 1123–1124.) The *Hudgins* court did not find unlawful the company's chargeback policy tied to individual sales. (*Id.* at pp. 1121–1122 & fn. 9.) The Verizon Wireless chargeback policy is tied to individual sales. While DeLeon objects to the chargeback policy under circumstances in which the customer cancels midway through the service plan, under the terms of the compensation plans the individual sale has not vested until the expiration of the chargeback period. Thus, any cancellation of the service plan results in the loss of a commissionable sale as set forth clearly and expressly in the compensation contract and does not constitute a violation of section 223.

### 3. *Remaining Causes of Action Are Not Viable*

DeLeon concedes that the remaining causes of action are derivative of the claim under section 223. Thus, we need not separately discuss these claims.

### DISPOSITION

The judgment is affirmed. Verizon Wireless is entitled to costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.