Filed 1/13/23  U.S. Bancorp Investments v. Madison CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| U.S. BANCORP INVESTMENTS, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> FARIBA MADISON, <br><br> Defendant and Appellant. | B309732 <br><br> (Los Angeles County Super. Ct. No. 19STCP05647) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lia R. Martin, Judge.  Affirmed.

K&L Gates, Paul W. Sweeney, Jr., Christina N. Goodrich, Zachary T. Timm and Kate G. Hummel for Plaintiffs and Respondents.

Law Offices of Steve A. Buchwalter, Steve Buchwalter; Law Offices of Scot D. Bernstein and Scot D. Bernstein for Defendant and Appellant.

_____

# INTRODUCTION

Fariba Madison appeals from the trial court's judgment confirming an arbitration award dated November 27, 2019, in favor of her former employer U.S. Bancorp Investments, Inc. (USBI), David Matthew Terrell, and Sean Pong, and denying her motion to vacate the award. Madison contends the trial court erred because the arbitration award caused a waiver of her unwaivable statutory rights, the arbitration decision failed to provide adequate findings and conclusions, and she did not receive sufficient discovery. Finding no error, we affirm.

# FACTUAL AND PROCEDURAL HISTORY

## A.  *Madison's Employment with USBI and Termination for Cause*

Madison worked for USBI as a financial advisor from February 2006 to October 2012. USBI employed her at-will and paid her a salary plus a commission as set forth in annual compensation plans that Madison signed each year. District sales manager Terrell supervised Madison from 2009 through 2012. According to Terrell's uncontradicted testimony, the plans had substantially similar language each year, and operated substantially the same. The plans described monthly "advances against future earned commissions" that Madison would receive based on prior production. The 2009 plan described that "commissions will be considered earned one year following the commissionable sale, to allow for reconciliation and offset of costs and chargebacks as provided in this plan. Until commissions are deemed earned, any advances will be subject to reduction, offset

2

or repayment as provided in this plan." The monthly compensation could decrease based on "Revenue Adjustments"—deductions from the gross revenue—Madison had produced. The annual compensation plans also required Madison to share a percentage of her commissions with her sales assistant.

On October 17, 2012, USBI terminated Madison's employment. It concluded Madison had interfered with an internal compliance investigation into inconsistencies with Madison's client account documents by attempting to obtain client signatures on paperwork subject to the investigation. Madison received her final paycheck on November 14, 2012.

B.	*Madison's Arbitration Claims and Discovery*

On January 15, 2016, Madison initiated arbitration against USBI, which proceeded before a three-member panel of the Financial Industry Regulatory Authority (FINRA). Madison's Statement of Claim asserted claims for unpaid wages (Lab. Code, § 201), back payment penalties (Lab. Code, § 203), unreimbursed expenses (Lab. Code, § 2802),[1] unjust enrichment, breach of the implied covenant of good faith and fair dealing, violation of Business and Professions Code section 17200 et seq., defamation (specifically by Pong, a USBI employee also supervised by Terrell, in making derogatory statements about her after her termination), receipt of stolen property (Pen. Code, § 496, subd. (a)), failure to return employee bond payment (Lab. Code, §§ 400-410), and illegal contract (Bus. & Prof. Code, § 16600). She also sought treble and punitive damages.

---

[1]	Further undesignated statutory references are to the Labor Code.

3

In support of her wage claims, Madison alleged USBI failed to pay or credit her for various commissions, including for "trades made before [her] termination but settled afterward," and failed to reimburse "expenses she reasonably incurred on behalf of USBI in the performance of her duties." She also alleged that "[b]y withholding and keeping for itself the compensation legally earned and payable" to her, USBI unjustly enriched itself at her expense.

During two years of litigation, Madison propounded and received a substantial amount of discovery, obtained two evidentiary hearing continuances, and filed three motions to compel. Prior to the panel ruling on her motions, she reached an agreement with USBI on production of documents related to her commission history and commission deductions (among other things). USBI ultimately produced over 20,000 pages of documents to Madison. The panel denied Madison's motion for a third continuance prior to the evidentiary hearing and denied her renewed motion for a third continuance the first morning of the evidentiary hearing in September 2018. The parties proceeded to an evidentiary hearing, beginning with four days devoted to discovery matters. The panel denied Madison's motion to compel further production of documents relevant to her wage claims. The panel chair stated, "I don't see any evidence of documents being intentionally withheld other than those that are privileged," and told Madison, "You certainly had the discovery for this issue."

C.      *The Evidentiary Hearing on the Merits and Motion To Dismiss*

In March 2019, the evidentiary hearing resumed. Madison spent 15 days presenting her case to the arbitration panel. As part of her case, Madison argued for the first time that USBI violated section 221 by imposing reversals and adjustments to her received compensation and by requiring her to share a percentage of her commission with her sales assistant.[2] Madison contended she was entitled to $623,036.43 in "commission reversals" and $195,476.87 in "incentive statement summary reversals" shown as negative entries on her commission reports, which she characterized as improper wage deductions in violation of section 221. She also argued the sales assistant commission share was an improper business expense in violation of section 2802.

After Madison rested, USBI moved to dismiss all of her claims pursuant to FINRA Rule 13504, subdivision (b). USBI argued Madison's section 221 claim was procedurally improper and untimely. It also argued she had no legal right to recovery because the evidence established the reversals were adjustments to advanced commissions under the annual compensation plans signed by Madison, not deductions to earned wages. USBI also argued the sales assistant commission share did not violate section 2802 as an improper wage deduction and business expense. In support, USBI contended the compensation plans Madison executed allowed her to receive advanced commissions, which she did not actually "earn" until USBI completed all

---

[2]      Section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

adjustments and reconciliations, including the sales assistant commission share, meaning USBI never deducted a commission share for her sales assistant from Madison's earned wages. USBI also moved to dismiss Madison's Penal Code section 496 claims on the grounds that employment compensation disputes did not constitute a Penal Code violation and therefore could not support recovery of treble damages.

After oral argument on the motion to dismiss, the panel issued an order dismissing Madison's section 221 claim for improper wage deductions, her section 2802 claim for improper deduction of wages and business expenses relating to the sales assistant commission share, and her Penal Code section 496 claims. The panel explained that it "struck the 221 claim simply because it wasn't fair to have that in the case because it wasn't in the Statement of Claim," but that Madison could attempt to maintain a claim to recoup her alleged improper reversals of compensation under other Labor Code sections as part of her remaining claims. The arbitrators suggested that it would be "helpful to the panel" if USBI put on evidence why Madison was not entitled to the alleged reversals. The panel also explained that with regard to the sales assistant commission share, "[w]e agreed with the argument that it was a matter of contract and it was appropriate for her to agree to share her commissions with her assistant."

USBI presented its defense over four additional evidentiary hearing days. Madison's former supervisor, Terrell, explained that USBI conditionally advanced commission payments to financial advisors prior to USBI receiving the actual revenue on the contract. USBI would then "chargeback," reducing the advanced commission if the deal did not generate the expected

revenue. Terrell also explained Madison received monthly commission reports. These reports detailed Madison's advanced commissions and negative adjustments that resulted from various types of required chargebacks pursuant to the terms of her compensation plan.[3] USBI's expert witness addressed the various transactions in these commission reports. He concluded Madison's calculation of purported negative "reversals" ignored related transactions that reflected corresponding credits. The expert witness concluded that USBI owed Madison no damages for unpaid commissions or improper deductions.

D.    *The Arbitration Award*

On November 27, 2019, the panel issued a 10-page award in favor of USBI on all claims. The panel found that Madison failed to prove any of her claims by the necessary preponderance of the evidence. The claims based on sections 201, 203, and 2802 failed because the compensation she claimed USBI did not pay was only an advance, "subject to appropriate deductions and adjustments made by USBI." The advances became wages only after application of the deductions and adjustments, a process "explicitly provided for in USBI's Financial Consultant Compensation Plan." Regarding the claim for unpaid commissions, the panel credited USBI's expert witness over Madison's own testimony that USBI failed to pay any commissions Madison had earned. The panel similarly rejected

_____

[3]    The compensation plan contemplated "[r]evenue [a]djustments" for a variety of events, including (from the 2012 plan) "services and transactions that were cancelled, that did not close, that were reversed or modified, that were incorrectly recorded or booked, and/or that USBI determines, in its discretion, violate USBI policy, this Plan, or business objectives."

7

the unjust enrichment claim because Madison failed to prove USBI "unlawfully benefited from the deductions and adjustments to the advances."

E.  *The Trial Court Confirms the Arbitration Award*

On December 26, 2019, USBI filed a petition in the trial court to confirm the arbitration award. Madison opposed and moved to vacate the award. USBI replied, opposed Madison's motion to vacate, filed objections to Madison's evidence, and submitted its own summary of events as part of its opposition to Madison's motion.

On September 2, 2020, the trial court sustained USBI's objections to Madison's evidence and issued a tentative ruling granting USBI's petition to confirm the award and denying Madison's motion to vacate. After a hearing on September 3, 2020, the trial court adopted its tentative decision and issued an order confirming the award. The trial court's order stated:

> "Madison argues that she was denied her substantive rights as the arbitrators failed to follow [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*)]. She was denied adequate discovery, did not receive a complete award as the arbitrators failed to rule on all issues before them, received an award which violated public policy and received an award which caused Madison to waive unwaivable statutory protections and rights.
>
> [¶]

8

"The documents Madison argues were not produced in discovery were the subject of at least three discovery hearings. USBI maintains that it produced all non-privileged documents in its possession, custody and control. Madison was unable to provide evidence that USBI did have documents it refused to produce, despite being granted continuances and evidentiary hearings to obtain such evidence. Madison did have adequate discovery.

"As to Madison's arguments that the award was based on a waiver of non-waivable rights and violated public policy, whether the monies at issue were wages is a factual issue. Evidence and authority was submitted by USBI that these were advances on commissions, which are not considered wages until earned and are subject to reconciliation, which includes deductions, prior to being considered wages. There was evidence explaining the deductions. Evidence was also submitted that sharing commissions is a standard industry practice which does not fall within the category of business expenses reimbursable by the employer. The sufficiency of that evidence is not subject to review. Madison has not established that the award requires a waiver of non-waivable rights or violated public policy.

"*Pearson Dental Supplies, Inc. v. Sup.Ct.* (2010) 48 Cal.App.4th 665, 680,[4] does not support Madison's argument. In that case, the claimant was denied a hearing on the merits of his FEHA claims, due to a legal error by the arbitrator. The narrow exception in *Pearson* applies when there is the denial of a hearing due to a legal error in the framework of a non-waivable right. Here, Madison was given lengthy hearings, both on her discovery issues and on the merits on her claims. That issues were determined against her is not a ground to vacate the award.

"Madison's argument that she did not receive a fully-reasoned award as it did not include discussion of claims which were dismissed prior to the hearing is not persuasive. The arbitrators issued a lengthy award which addressed the ruling on the motion to dismiss."

The trial court entered judgment on October 19, 2020. Madison timely appealed.

## DISCUSSION

A.    *Standard of Review*

""On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that

---

[4]    The correct citation is *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665.

10

the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.""" (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 900; accord, *Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973 (*Roussos*); *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 386 (*Douglass*); see *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [reviewing de novo whether arbitrator exceeded his or her powers].) "[I]n reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them." (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087; accord, *Douglass,* at p. 386.) "We also review de novo 'legal issue[s] involving statutory construction and the ascertainment of legislative intent.'" (*Roussos,* at p. 973.)

We apply a different, "highly deferential standard of review to the award itself." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12 (*Cooper*).) Ordinarily "'[t]he merits of the controversy between the parties are not subject to judicial review.'" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10-11 (*Moncharsh*).) Instead, the reviewing court "'restrict[s] [its] review to whether the award should be vacated under the grounds listed in [Code of Civil Procedure] section 1286.2.'" (*EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1064.) Accordingly, we do not review the arbitrator's reasoning or the sufficiency of the evidence, and "an arbitrator's decision cannot be reviewed for errors of fact or law" absent "narrow exceptions." (*Moncharsh,* at p. 11; accord, *Cooper*, at p. 12.) "These exceptions do not encompass all errors that are apparent on the face of the award

11

and cause substantial injustice." (*Cooper*, at p. 12; accord *Moncharsh,* at p. 11.)

B.    *The Trial Court Properly Confirmed the Arbitration Award*

The trial court may vacate an arbitrator's award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  (Code Civ. Proc., § 1286.2, subd. (a)(4).) "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; see *Moncharsh, supra,* 3 Cal.4th at p. 32 [the "limited and exceptional circumstances" where judicial review of an arbitrator's decision is appropriate "include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights"].)

Madison argues that because sections 201, 203, 221, and 2802 are unwaivable pursuant to sections 219 and 2804,[5] the

---

[5]    Section 219 provides, "[N]o provision of this article [section 200 et seq.] can in any way be contravened or set aside by a private agreement, whether written, oral, or implied." Section 2804 provides, "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article [section 2800 et seq.] or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."  "Labor Code section 2804 voids any agreement to waive the protections of Labor Code section 2802 as against public policy. . . .  Courts have interpreted Labor Code section 2804 to apply to Labor Code section 2802, making all contracts that waive an employee's right to indemnification null

arbitration panel exceeded its authority by issuing an award that violated her unwaivable statutory rights and contravened public policy. Madison's argument fails.

1. *The arbitration award did not waive Madison's unwaivable rights under Labor Code sections 201, 203, and 2802*

Madison contends she had the right to immediate payment of her final paycheck under section 201. Because USBI delivered her final paycheck 28 days after it terminated her employment, Madison sought waiting time penalties under section 203. Madison also asserted that USBI violated sections 201 and 2802 by failing to reimburse her for all wages and costs incurred in furtherance of her duties as an employee by not including in her final paycheck all amounts taken back from her past paychecks and all deductions previously directed to her sales assistant.

Section 201 provides that when an employer discharges an employee, "the wages earned and unpaid at the time of discharge are due and payable immediately." "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (§ 200, subd. (a).) Section 203 provides that if an employer willfully fails to pay in full any wages of a discharged employee, for up to 30 days "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced." Section 2802 entitles an employee to reimbursement from an employer "for all necessary

and void." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 951.)

13

expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

So long as it does so in writing, an employer can deem commissions not "earned" (for purposes of section 201) until the satisfaction of certain conditions precedent, including chargebacks. (*DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 810 (*DeLeon*); accord, *Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1166-1167 [""A commission is 'earned' when the employee has perfected the right to payment; that is, when all of the *legal* conditions precedent have been met.""].) "An advance is not a wage." (*Semprini v. Wedbush Securities, Inc.* (2020) 57 Cal.App.5th 246, 255; accord, *Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 705.) An advanced commission is not a wage because, by definition, "at the time of payment the employer cannot determine whether the commission will eventually be earned" and if the conditions on the employee's right to the commission will occur. (*Steinhebel,* at p. 705.)

The written incentive compensation plan approved by the *DeLeon* court resembles the ones at issue here and illustrates these principles. The *DeLeon* plans "clearly and expressly stated" that commissions were not earned at the time a salesperson sold a cell phone service plan. (*DeLeon, supra,* 207 Cal.App.4th at p. 810.) As here, "[w]hile commission payments were made in advance, commissions were earned only if the customer did not cancel the cell phone service before the expiration of the chargeback period." (*Ibid*.) Thus, as in the *DeLeon* plan, Madison's commissions became wages only after calculation of the final net revenue amount, accounting for any adjustments.

(See *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 229 [only final net profit figure for each store determined incentive compensation for store employees, and "[t]his final figure, and this figure only, once calculated, was the amount offered or promised"].)

The arbitration panel determined, "[Madison]'s claims based upon California Labor Code §§ 201, 203, and 2802 are not applicable to her case because her compensation for her sales transactions were only advances, subject to appropriate deductions and adjustments made by USBI, and became wages only after such deductions and adjustments were made, which was explicitly provided for in USBI's Financial Consultant Compensation Plan." The trial court concluded: "As to Madison's arguments that the award was based on a waiver of non-waivable rights and violated public policy, whether the monies at issue were wages is a factual issue. Evidence and authority was submitted by USBI that these were advances on commissions, which are not considered wages until earned and are subject to reconciliation, which includes deductions, prior to being considered wages. There was evidence explaining the deductions. Evidence was also submitted that sharing commissions is a standard industry practice which does not fall within the category of business expenses reimbursable by the employer. The sufficiency of that evidence is not subject to review. Madison has not established that the award requires a waiver of non-waivable rights or violated public policy."

We agree up to a point. USBI certainly presented evidence that Madison signed a compensation agreement providing for advances. USBI also established, pursuant to the compensation agreement, that Madison did not "earn" the commissions

15

reflected by those advances until the occurrence of certain conditions over time. As a factual matter, USBI proved that it paid Madison in accordance with the provisions of the compensation plans; that is, it made deductions from the advances and finalized Madison's earned commission pursuant to the compensation plan provisions. The panel found that the disputed deductions and post-payment reversals constituted standard adjustments—not unlawful deductions from earned wages—to Madison's advanced commissions and permissible commission sharing with her sales assistant, all as specified by the compensation plans. We take "as correct" these factual findings. (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99.)

On the other hand, whether USBI paid Madison advances or wages when it made the monthly payments to her presents at least a mixed question of fact and law. Per the arbitration panel, Madison's commissions became earned wages only after USBI charged back the deductions and adjustments. The panel also made a finding, largely by crediting Terrell's testimony about the compensation plans and their implementation, that Madison's paychecks constituted advances of her sales commissions, not wages. Regardless of whether this presents a factual issue, a legal issue, or a mixture of the two, we agree with the arbitration panel and the trial court that Madison signed an agreement to receive advances, with the express understanding that the advances would not become earned wages until USBI made the adjustments specified in the plan. (See *DeLeon, supra,* 207 Cal.App.4th at p. 810.) We also agree that USBI's initial payments to Madison amounted to advances that Madison did not earn until the occurrence of certain conditions as specified in

16

the plans. Because Madison's compensation initially consisted of advances and not earned wages, she may not pursue claims invoking sections 201, 203, and 2802 because those sections apply only to earned wages. (See *Sciborski v. Pacific Bell Directory, supra,* 205 Cal.App.4th at pp. 1166-1167.)

Madison concedes UBSI's compensation plan designates commission compensation as an advance until certain conditions occur, but she disputes the panel's determination that her final compensation consisted of an advance. She also argues "the arbitrators' ruling that Ms. Madison's final paycheck was an advance makes no logical sense whatsoever," and that the commissions reflected in her final paycheck should be considered earned wages, not an advance. As it did in the trial court, this argument goes to the merits of her dispute with USBI by relitigating the panel's reasoning and conclusions. We do not review the arbitrators' reasoning. (*Moncharsh, supra,* 3 Cal.4th at pp. 10-11.) Simply because Madison did not receive a favorable determination on the merits does not mean the arbitration award violated her statutory rights. Generally "it is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties[;]" including "all the contested issues of law and fact submitted to the arbitrator for decision. The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement[;] . . . the arbitrator's award does no more than resolve that dispute." (*Id.* at p. 28.) Under the circumstances here, the panel did not exceed its powers in resolving the questions of law and fact presented to it, and the trial court did not err in concluding that no statutory ground asserted by Madison warranted vacating the arbitration award.

17

2. *The arbitration panel did not improperly shift the burden of proof onto Madison or waive Madison's unwaivable rights under section 221*

Madison contends the arbitration panel "reversed" the burden of proof on her statutory wage claims, depriving her of the ability to vindicate her unwaivable statutory rights. As USBI points out, section 221 is the only statute asserted by Madison where the burden of proof may shift to the employer. "An employee seeking to recover under Labor Code section 2802 for business expenses paid out of pocket must show that the expenditures were 'necessarily expend[ed] in direct consequence of the discharge of the employee's duties[.]'" (*Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1337 (*Davis*).) However, where an employee establishes her employer deducted "apparently business-related expenses" from her paychecks, "[u]nder Labor Code sections 221 and 224, the employer bears the burden of establishing that such deductions are authorized by law." (*Davis,* at p. 1337.)

As the panel found, Madison failed timely to assert a section 221 claim that would trigger a burden-shifting analysis. Although Madison relies on section 221 for her argument about improper wage deductions, she did not assert a claim for improper wage deductions in violation of section 221 in her Statement of Claim or pursue a section 221 claim for improper wage deductions during discovery, and she never filed an amended Statement of Claim adding any causes of action based on section 221. Rather, she argued for the first time at the evidentiary hearing that various post-paycheck adjustments to compensation, and her commission shared with her sales assistant, constituted improper wage deductions in violation of

18

section 221. The panel dismissed the section 221 claim as improper because Madison did not include it in her Statement of Claim, but the panel did permit her to maintain a claim to recoup her alleged improper reversals of compensation under her remaining Labor Code causes of action. Because Madison neither sought nor obtained leave to amend her Statement of Claim, the panel acted well within its authority to dismiss the section 221 claim. (See FINRA rule 13309(b) [party may only amend pleading if panel grants a motion that includes with it copy of the proposed amended pleading].) We do not revisit that decision here.

In any event, even if Madison properly had presented a section 221 claim for improper wage deductions, it would suffer the same flaw as Madison's other claims. The panel found Madison's compensation prior to adjustment consisted of advances, not earned wages. These commissions did not become earned wages until USBI adjusted them with the chargebacks. We do not second guess or disturb these findings on appeal. (*Moncharsh, supra,* 3 Cal.4th at p. 11.)

C.     *Madison Conducted Adequate Discovery To Arbitrate Her Statutory Claims*

An arbitration "permits an employee to vindicate his or her statutory rights" only if it "meet[s] certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Armendariz, supra,* 24 Cal.4th at pp. 90-91 [addressing arbitration of FEHA claims]; see *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 180 (*Mercuro*) ["[W]e see no

19

reason why *Armendariz*'s 'particular scrutiny' of arbitration agreements should be confined to claims under FEHA. Rather, under the Supreme Court's analysis, such scrutiny should apply to the enforcement of rights under any statute enacted 'for a public reason.'"].) "These requirements were founded on the premise that certain statutory rights are unwaivable." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076.) Parties to an arbitration must have discovery "sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review pursuant to Code of Civil Procedure section 1286.2." (*Armendariz*, at p. 106.)

Here, over two years of discovery, Madison propounded more than 80 written discovery requests on USBI, obtained two evidentiary hearing continuances, and reached agreement with USBI after she filed three motions to compel to produce specific documents relating to her commission history and deductions. USBI produced over 20,000 pages of documents. This discovery included USBI's annual compensation plans signed by Madison detailing how financial advisors earned commissions and other incentive pay, Madison's entire detailed pay history and monthly incentive pay detail, and Madison's 2010-2012 monthly commission reports showing revenue, deductions and adjustments made to Madison's advanced commissions. Over USBI's objections, and with the benefit of multiple continuances, Madison participated in four days of discovery hearings. Ultimately, the panel concluded USBI did not improperly withhold any documents.

Notwithstanding USBI's voluminous document production Madison contends she still did not receive sufficient discovery regarding the adjustments and reconciliations made to her advance commissions or "evidence that would enable her to show that USBI did not have a legitimate reason for taking back her earned wages." "'[A]dequate' discovery does not mean unfettered discovery," and "[u]ltimately it is up to the arbitrator and the reviewing court to balance the need for simplicity in arbitration with the discovery needs of the parties." (*Mercuro, supra,* 96 Cal.App.4th at p. 184.) Madison propounded and received more than adequate discovery to vindicate her statutory rights as required under *Armendariz.*

D. *The Arbitration Decision Was Sufficiently Detailed To Permit Judicial Review*

Madison contends the written arbitration decision further violates *Armendariz* because it lacked sufficient detail and failed to set forth reasons for the rulings made. As noted, *Armendariz* requires arbitrations to result in "a written decision that will permit a limited form of judicial review." (*Armendariz, supra,* 24 Cal.4th at p. 91.) The arbitrator "must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." (*Id.* at p. 107.)

The arbitration award in this case satisfies that requirement. The 10-page decision includes sufficient clarity and detail that we can review the panel's conclusion rejecting Madison's claims under sections 201, 203, and 2802 based on its finding that Madison's paychecks consisted of commission advances rather than earned wages, and its conclusion that she

21

received adequate discovery.  As did the trial court, we also find unpersuasive Madison's argument she did not receive a fully reasoned award because it did not include discussion of her Penal Code section 496, subdivision (a), claims or attempted section 221 claim that the panel dismissed.  The award noted the panel's rulings on USBI's motion to dismiss the Penal Code and section 221 claims, which adequately reveals the panel's reason for not discussing those claims further.  Regarding the section 221 claim, Madison cites no authority requiring an arbitration decision to discuss a claim not asserted in the Statement of Claim and dismissed after being untimely raised at the arbitration hearing, and where the panel explained its reasoning for the dismissal on the record.

The panel's decision allows judicial review sufficient to ensure the panel complied with the requirements of the statutes on which Madison based her claims.

## DISPOSITION

The judgment confirming the arbitration award is affirmed. USBI shall recover its costs on appeal.


HOWARD, J.*

We concur:


SEGAL, Acting P. J.


FEUER, J.

---

* Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.